GREAT NORTHERN INDUSTRIES, INC., & another[1] *vs.*
HARTFORD ACCIDENT AND INDEMNITY COMPANY.[2]

No. 94-P-1623.

Suffolk. March 12, 1996. - July 9, 1996.

Present: DREBEN, KAPLAN, & PORADA, JJ.

*Insurance,* Comprehensive liability insurance, Coverage, Pollution exclusion clause. *Practice, Civil,* Summary judgment. *Words,* "Occurrence," "Sudden or accidental."

A pollution exclusion clause in a policy of comprehensive general liability insurance, the operation of which was expressly excepted in "Maryland, New Hampshire and Vermont," excluded coverage for a Vermont corporation's release of pollutants in the State of Maine, where the policy coverage was based on "occurrences" of pollution rather than on where the waste was produced. [688-690]

The record of a motion for summary judgment in a civil action, in which an insured sought coverage from its insurer under an exception to a pollution exclusion clause in the applicable policy, did not support a conclusion that the pollution "occurrence" was "sudden or accidental" such as would fall within any coverage provision. [690]

CIVIL ACTION commenced in the Superior Court Department on July 2, 1993.

The case was heard by *Joseph A. Grasso, Jr.,* J., on a motion for summary judgment.

*James E. McGuire (Michael J. O'Neill* with him) for the plaintiffs.

*Gregory P. Deschenes* for the defendant.

KAPLAN, J. Ben-Mont Corporation (Ben-Mont), an insured

---

[1]Ben-Mont Corporation.

[2]Hartford Fire Insurance Company responded to the complaint, indicating that it and not the named defendant had issued a policy to the plaintiffs; the complaint was never amended.

under a policy of insurance issued to Great Northern Industries, Inc. (Great Northern), by Hartford Fire Insurance Company (Hartford), brought this action against Hartford demanding damages (with declaratory remedy) for Hartford's alleged breach of the insurance contract in failing to defend and indemnify Ben-Mont in respect to the environmental claims mentioned below. Hartford answered with denials and other defenses. Later Hartford moved for summary judgment, and Ben-Mont opposed. Upon the record made, a judge of the Superior Court allowed the motion, and from the judgment Ben-Mont appeals. We affirm.

The facts and contentions are as follows. Ben-Mont operates a plant in Bennington, Vermont, that manufactures gilt wrapping paper. In the eighteen-month period from June, 1982, to December, 1983, Ben-Mont on eight occasions sent its solvent waste by licensed hauler to the Union Chemical reclamation site located in South Hope, Maine. Three of the shipments, a total of 132 drums, were made between July 1 and December 31, 1983. The policy period was July 1, 1983, to July 1, 1984.

In March, 1987, the U.S. Environmental Protection Agency (EPA) informed Ben-Mont that it was a party potentially responsible for the cleanup of the site under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601 et seq. (1982). Ben-Mont thereafter, in September, 1987, paid $16,892.05 to EPA and the State of Maine's Department of Environmental Protection as an interim partial settlement for its share of the cleanup costs.

The insurance policy at bar is a comprehensive general liability policy (CGL). Negotiated and issued in Massachusetts through a Massachusetts broker, it was issued to Great Northern, a Massachusetts corporation, and named Ben-Mont, also a Massachusetts corporation, and fourteen other companies in various States as additional insureds.[3] The pertinent policy provisions read thus.

Hartford undertakes to pay

"on behalf of the insured all sums which the insured

---

[3]It is now undisputed in the present case that Massachusetts law governs the interpretation of the Hartford policy.

shall become legally obligated to pay as damages because of . . . property damage . . . to which this insurance applies, caused by an occurrence."

An "occurrence" is

"an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

A "pollution exclusion" clause excludes coverage for

"bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants, into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

An endorsement is directed to and affects the "pollution exclusion" clause:

"CONTAMINATION OR POLLUTION

"(Applicable in Maryland, New Hampshire and Vermont)

. . .

"It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is deleted."

*Discussion.* Was Hartford obliged to furnish coverage? The release of contaminants or pollutants at the Union Chemical site may be taken to be an "occurrence" within the meaning of the policy. But coverage — except for any release that is

"sudden and accidental" — is excluded by the "pollution exclusion" clause. The exclusion, however, is subject to the exception set out in the endorsement which is "applicable in Maryland, New Hampshire and Vermont."

Ben-Mont has argued that the endorsement applies to the present case, and has the effect of reinstating coverage, because Ben-Mont operates and does business in a named State, Vermont. Hartford reads the endorsement differently, as meaning that the release of the contaminants or pollutants must have occurred in one of the named States — and here the release occurred elsewhere, in Maine. The motion judge took the latter view, and this, we believe, is supported by the decision of the Supreme Judicial Court in the case of *Nashua Corp.* v. *First State Ins. Co.*, 420 Mass. 196 (1995), decided on May 2, 1995, pending the instant appeal. The endorsement in *Nashua* provided: "It is agreed that the [pollution] exclusion . . . is deleted. This endorsement applies only with respect to operations or occurrences in Maryland, New Hampshire [and] Vermont." The court held that the operations referred to were not those of the insured that "produced the waste" but rather those of the recycling site that "actually caused the releases." 420 Mass. at 199. And again, the court noted that "the pollution damage occurred, not as a result of the generation of the waste, but by its release into the environment." *Id.* at 200.

The text of the present endorsement varies somewhat from Nashua's, but we think the plain sense is the same. Summing up, the court said in the *Nashua* case: "The pollution exclusion applied to certain releases or discharges of pollutants. The deletion endorsement by its terms negates the effect of that exclusion only with respect to operations and occurrences in New Hampshire [the insured's place of business]. When read together, the plain meaning is that the exclusion does not apply to releases of pollutants occurring in New Hampshire. . . . [T]he pollution exclusion clause remains in effect as to the releases from the Silresim [Massachusetts] and Union Chemical [Maine] facilities." *Id.* at 200-201. Like analysis applies in the present case. It is but another way of putting the matter to say that the Hartford policy is one based

on "occurrences" and that those relate to the release of pollutants, not to the creation of the waste.[4]

There is a final point. The pollution exclusion clause by its own terms does not apply if the release is "sudden or accidental": in such a case there is coverage. At no place in the present record was a contention made or supported that any relevant release was of that character — a contention that, if it was to be made at all, apparently must be made and proved by the insured as part of its burden of establishing coverage. See *A. Johnson & Co.* v. *Aetna Cas. & Sur. Co.*, 741 F. Supp. 298, 305 (D. Mass. 1990), aff'd, 933 F.2d 66, 75-76 n.14 (1st Cir. 1991); *Covenant Ins. Co.* v. *Friday Engr., Inc.*, 742 F. Supp. 708, 711 (D. Mass. 1990).

In the *Nashua* case, the insured, as plaintiff, presented evidence that raised a genuine issue of material fact whether any release there relevant was indeed sudden or accidental, rather than the result of the ordinary operations (there was evidence of a tank seal burst releasing 2,000 gallons of xylene).[5] Therefore the summary judgment for the insurer, otherwise correct, had to be reversed for trial on that point.

That the reclamation site in the *Nashua* case was the Union Chemical site in Maine, leads Ben-Mont to make the extraordinary suggestion that this court should take judicial notice of the "facts" of the *Nashua* case and enlarge the present record to include those facts, meaning thereby, presumably, evidence raising the possibility that a release that was in question in *Nashua* was sudden or accidental. We think the translation to this case of evidence from a record between different parties on a separate claim by a process of so-called judicial notice would be quite impermissible. See Liacos, Massachusetts Evidence § 2.6, at 39, § 2.7, § 2.8.1, at 44 (6th ed. 1994); Flanagan, Trial Practice § 206, at 204 (1993). Any information about sudden or accidental releases was long since open to investigation by Ben-Mont. It is held to the record made on the motion for summary judgment and here on review.

---

[4]Ben-Mont's suggestion, that "regulatory history" calls for a different reading, is sufficiently answered in *Nashua*, 420 Mass. at 200 & n.10.

[5]That it was the plaintiff which proffered the evidence is noted in *Nashua*, 420 Mass. at 203.

We conclude that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 712-714 (1991).[6]

*Judgment affirmed.*

---

[6]There is nothing in Ben-Mont's contention that Hartford's conduct toward Ben-Mont was such that Hartford became estopped or otherwise barred from defending against Ben-Mont's claim under the policy. So also Ben-Mont's pleaded cause of action for unfair or deceptive practices under G. L. c. 93A is wholly unsupported.