## HIGHLANDS INSURANCE COMPANY *vs.* AEROVOX INCORPORATED.

Suffolk. January 7, 1997. - February 7, 1997.

Present: WILKINS, C.J., O'CONNOR, GREANEY, & FRIED, JJ.

*Insurance,* General liability insurance, Pollution exclusion clause. *Environment,* Environmental cleanup costs. *Indemnity. Evidence,* Presumptions and burden of proof. *Practice, Civil,* Burden of proof, Summary judgment. *Words,* "Sudden and accidental."

This court concluded that, in an action brought under a general liability insurance policy for environmental cleanup costs, once the insured has borne the initial burden of proving coverage and the insurer has borne the burden of showing that a general pollution exclusion applies, the burden then shifts back to the insured to prove that the contamination was caused by a "sudden and accidental" discharge or release so as to escape the exclusion. [230-232]

A Superior Court judge correctly ordered summary judgment in favor of an insurer in an action seeking a declaration that the insurer had no duty to indemnify under a general liability insurance policy for environmental cleanup costs, where the judge determined that the insured would be unable to show that more than a de minimis amount of pollution for which it was liable was the result of a sudden and accidental discharge occurring in 1958, so as to escape the pollution exclusion clause in the policy. [232-235]

CIVIL ACTION commenced in the Superior Court Department on April 23, 1991.

The case was heard by *Gordon L. Doerfer,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Anita Fox,* of the District of Columbia (*Lisa Campolo Goodheart* with her) for the plaintiff.

*David A. Guberman* (*Robert J. Muldoon, Jr.,* & *Barbara O'Donnell* with him) for the defendant.

*Rosanna Sattler* & *Jeffrey W. Armstrong,* & *Laura Foggan, Robert B. Bell,* & *Terri A. Ecklebarger,* of the District of Columbia, for Insurance Environmental Litigation Association, amicus curiae, submitted a brief.

*James McGuire, & Ann V. Kramer, Sarah B. Hechtman & Ian Scheinmann,* of New York, for Atlas Tack Corporation, amicus curiae, submitted a brief.

FRIED, J. Highlands Insurance Company (Highlands) seeks a declaration that it has no duty to indemnify Aerovox Incorporated (Aerovox) under Aerovox's general liability insurance policy for environmental cleanup costs Aerovox agreed to pay pursuant to a consent decree with the United States Environmental Protection Agency (EPA). The policy contains an exception to its general exclusion of environmental claims by which "sudden and accidental" releases of pollutants are covered by the policy. The Superior Court granted summary judgment to Highlands. Aerovox appealed, we transferred the case to this court on our own motion, and now affirm.

I

From 1956 to 1980, Re-Solve, Inc. (Re-Solve), operated a waste chemical reclamation facility located in North Dartmouth. Both the Massachusetts Department of Environmental Quality Engineering (DEQE) (now the Department of Environmental Protection) and the EPA have investigated the site, and it has been placed on the national priority list for purposes of environmental cleanup under the Superfund program. The EPA's record of decision (ROD) listed the most serious problem areas at the site and identified them as "contaminant sources." The four areas specified were the unlined lagoons where residues and sludge from the waste distilling process were discarded, the pond where cooling water used in the distillation process was discharged, the fields where waste oil was plowed into the soil, and the area around the former septic system and low drainage areas along a pipeline right of way. In addition to the sources of contamination identified in the ROD, an explosion and a fire in 1958 destroyed most of the facility which was subsequently rebuilt.

In 1983, Aerovox received notification from the EPA that it was considered a potentially responsible party (PRP) in respect to the Re-Solve site. Aerovox itself had never used the Re-Solve site, but its predecessor corporation, Belleville Industries, had shipped waste there from 1973 to 1978. The EPA determined that Aerovox and affiliated companies shipped 0.097% of the total volume of pollutants at the site.

This group of companies was assigned a joint share of 7.5% of the total liability, of which Aerovox's individual share was later determined to be 2.37% of total liability.[1] Aerovox and other PRPs entered into a consent decree with the EPA to settle this liability. Aerovox agreed to pay approximately $1.4 million. Liberty Mutual Insurance Company (Liberty Mutual) had issued primary insurance to Aerovox in 1980, and settled with Aerovox for $215,270.[2] The Highlands policy in question was an excess (secondary) policy to Liberty Mutual's for that year.[3] Aerovox sought recovery from Highlands on its excess policy, but Highlands refused and brought this suit for a declaration that it has no duty to indemnify Aerovox.

The policy under which Aerovox seeks recovery provides:

> "The company hereby agrees to indemnify the insured against such ultimate net loss in excess of the insured's primary limit as the insured sustains by reason of liability imposed upon the insured by law or assumed by the insured under contract for damages because of personal injury or property damage to which this policy applies, caused by each occurrence happening anywhere in the world."

An endorsement to the policy added the following exclusion:

> "The policy shall not apply to personal injury or property damage arising out of the discharge, dispersal, release or escape of:
>
> (1) smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental . . . ."

---

[1] In determining the liability share, the EPA considered the nature of the waste transported as well as the total volume.

[2] The Fireman's Fund which issued primary policies from 1981 to 1985 also settled with Aerovox for $500,000.

[3] Highlands had argued below that Liberty Mutual improperly attributed its full payment to 1980 when Highlands was the excess carrier rather than other years where Liberty Mutual was the excess carrier. Highlands contends that Liberty Mutual did not meet its full liability under the primary policy, but that issue is not raised on appeal.

The motion judge was initially concerned that there was no causal connection between the 1958 fire and Aerovox's liability but gave Aerovox an opportunity to try to demonstrate such a connection. Aerovox responded with an affidavit from David Herer, who was hired by the PRPs to study the Re-Solve site and create a plan of treatment.[4] Herer concluded that "it is my expert opinion that, as a consequence of the natural process of migration and the characteristic of solvents and other contaminants, especially DNAPLs,[5] to persist in the environment for prolonged periods of time, the solvents and contaminants released during the 1958 fire/explosion continued to cause ongoing property damage at the Re-Solve Site throughout the 1970s and 1980s." Based on this affidavit, the motion judge denied Highlands' motion for summary judgment on the ground that Aerovox had presented a question of fact because liability as a result of the fire would fall into the "sudden and accidental" exception to the exclusion. On reconsideration the judge reversed himself, determining that Aerovox bore the burden of proof that its liability was premised on a "sudden and accidental" release and finding that the fire could not have "contributed more than a de minimis amount of Aerovox's total liability." The judge determined that "Aerovox's affidavit that a 1958 fire caused some undifferentiated, continuing property damage during the policy period is not sufficient to defeat Highlands' motion for summary judgment."

## II

Aerovox appeals on two grounds. First, it claims that the motion judge incorrectly placed the burden of proof on Aerovox to demonstrate that its liability was premised in part on a "sudden and accidental" release. Second, Aerovox claims that our decision in *Nashua Corp.* v. *First State Ins. Co.*, 420 Mass. 196 (1995), precludes summary judgment even in a pollution prone industry where there is evidence that some of the pollution resulted from releases that were "sudden and accidental."

---

[4]David Herer has a master's degree in civil and environmental engineering and twenty years' experience in hazardous waste management.

[5]The abbreviation DNAPLs refers to pollutants categorized as "dense nonaqueous phased liquids."

## A

It is an open question in Massachusetts which party has the burden of proving whether the "sudden and accidental" release exception applies. This court has expressly declined to take up the question. *Polaroid Corp.* v. *Travelers Indem. Co.,* 414 Mass. 747, 753 n.7 (1993) ("we need not decide whether the insurer or the insured has the burden of proof on the question of the sudden and accidental nature of any discharge").[6] We have, however, spoken on the issue of burden of proof in insurance contracts generally. The insured bears the initial burden of "prov[ing] that the loss [is] within the description of the risks covered." *Tumblin* v. *American Ins. Co.,* 344 Mass. 318, 320 (1962). *Murray* v. *Continental Ins. Co.,* 313 Mass. 557, 563 (1943), expresses the rule as to exclusions:

> "The general rule governing . . . [is] that a plaintiff seeking to recover for breach of a duty or obligation created by a general clause of a contract, which also contains an exception descriptively limiting such duty or obligation, must allege and prove that his cause of action is within the contract and outside the exception; but that where the exception is in another separate and distinct clause of the . . . contract defining . . . the duty or obligation, then the burden is upon the party relying on such exception."

In that case, the court held that the insurer bore the burden to prove the applicability of an exclusion in a separately labeled section of the insurance contract labeled "Hazards not covered." *Id.* at 566. Under this principle, the insurer, Highlands, must bear the burden of showing that the general pollution exclusion applies. The parties agree on this point.

In this case, however, the policy goes one step further. The

---

[6]In *Polaroid Corp.* v. *Travelers Indem. Co.,* 414 Mass. 747 (1993), we did place the burden of proof on the insurer in those cases where the insurer is in breach of its duty to defend the insured. *Id.* at 764 n.22. We expressly stated that that determination was made irrespective of which party would normally bear that burden in the absence of a breach of the duty to defend. The shifting of the burden to the insurer in those cases is necessary to protect the insured because the failure to defend might make it more difficult for the insured to prove that the underlying claim falls within the insurance coverage. *Id.* at 764.

pollution exclusion contains an exception for "sudden and accidental" releases, and the question presented is whether the exception to the exclusion shifts the burden back to the insured or whether the insurer retains the burden as part of its burden to prove the exclusion generally. Highlands contends that, because the insured bears the initial burden of proving coverage, it is logical to place the burden back on the insured once the insurer has shown that coverage is excluded. Aerovox contends that, under Massachusetts law, the burden shifts only if the exception is in a separate and discrete section of the contract.

We conclude that the insured must bear the burden of proving that the contamination was caused by a sudden and accidental release. See *Great N. Indus., Inc.* v. *Hartford Acc. & Indem. Co.*, 40 Mass. App. Ct. 686, 690 (1996); *Interex Corp.* v. *Atlantic Mut. Ins. Co.*, 874 F.Supp. 1406, 1416-1417 (D. Mass. 1995).[7] Once the insurer has demonstrated that a policy exclusion applies negating coverage, placing the burden on the insured to prove that the damage was caused by a sudden and accidental release is consistent with the general rule that the insured must prove that coverage applies, and absolves the insurer from bearing the difficult burden of proving the negative. In addition, we agree with the United States Court of Appeals for the Ninth Circuit that placing the burden on the insured is the better rule:

> "Moreover, if the burden were on the insurer, the property owner would have an incentive to avoid finding out whether pollutants are being gradually discharged, because preservation of ignorance would increase the likelihood of insurance coverage. . . .

> "This assignment to the insured is also consistent with the usual rules for allocating burdens of proof. The rule places the burden on the party who will generally

---

[7]Courts addressing this issue have split on the issue. For courts placing the burden on the insured, see, e.g., *St. Paul Fire & Marine Ins. Co.* v. *Warwick Dyeing Corp.*, 26 F.3d 1195, 1200 (1st Cir. 1995) (Rhode Island law); *Aeroquip Corp.* v. *Aetna Cas. & Sur. Co.*, 26 F.3d 893 (9th Cir. 1994) (California law); *Northern Ins. Co.* v. *Aardvark Assocs., Inc.*, 942 F.2d 189 (3d Cir. 1991) (Pennsylvania law). For courts placing the burden on the insurer, see, e.g., *State* v. *Blank*, 27 F.3d 783 (2d Cir. 1994) (New York law).

have access to facts that show the discharge of pollutants was sudden and unexpected. If the discharge actually was sudden, . . . the policyholder should be better able to prove the suddenness than the insurer would be able to prove its absence."

*Aeroquip Corp.* v. *Aetna Cas. & Sur. Co.*, 26 F.3d 893, 895 (9th Cir. 1994).[8]

## B

Aerovox contests the judge's allowance of summary judgment in favor of Highlands. Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983). The moving party bears the burden of proving that there are no material issues of fact and that he is entitled to judgment as a matter of law. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). Where the moving party does not bear the burden of proof at trial, "this burden need not be met by affirmative evidence negating an essential element of the . . . case, but may be satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial." *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991). See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706 (1991). Cf. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986), cert. denied, 484 U.S. 1066 (1988).

Aerovox's principal argument is that the judge's grant of

[8]We recognize that determining which party bears the burden of proving an exclusion is dependent on the location of the exclusion in the insurance policy: where the exclusion is in the same paragraph as the coverage clause, the exclusion is considered part of the coverage clause for purposes of burden of proof, but where the exclusion is in a separate and distinct part of the insurance policy, the exclusion is treated separately from the coverage clause and the burden shifts to the insurer. *Murray* v. *Continental Ins. Co.*, 313 Mass. 557, 563 (1943). *Brown Daltas & Assocs.* v. *General Acc. Ins. Co.*, 48 F.3d 30, 37 (1st Cir.), cert. denied sub nom. *Brown Daltas & Assocs.* v. *Northbrook Excess Surplus Ins. Co.*, 516 U.S. 822 (1995). However, it stretches this approach too far to require that the exception to an exclusion must be treated as part of the exclusion solely because the exception is in the same paragraph as the exclusion.

summary judgment to Highlands was incorrect under our decision in *Nashua Corp.* v. *First State Ins. Co.,* 420 Mass. 196 (1995). In that case, this court reversed the allowance of a motion for summary judgment because the plaintiffs presented evidence that sudden and accidental releases had occurred even though there was also evidence that much of the pollution occurred during normal business activities at a waste disposal facility. In *Nashua, supra,* the critical issue was whether any of the releases could be considered sudden and accidental. We found that the alleged events in that case, a fire and a tank seal burst spilling over 2,000 gallons of xylene, could be considered sudden and accidental even in the context of a pollution-prone industry,[9] and, therefore, "a factual question exists regarding what portion of the pollution damage resulted from the reclamation sites' ordinary operations and what portion was caused by sudden and accidental releases, if any." *Id.* at 203. Aerovox contends that, since it presented evidence of a sudden and accidental release, a factual question like that in *Nashua* was made out so as to defeat summary judgment.

Here, unlike *Nashua,* summary judgment was allowed not because the releases were not sudden and accidental, but rather because the motion judge determined that, on the submissions presented to the court, Aerovox would be unable to show that more than a de minimis amount of the pollution resulted from the accident. Because this case raises the issue of causation which was not raised as a basis for summary judgment in *Nashua,* that case is inapposite.[10] Aerovox must not only present evidence tending to show that there was a sudden and accidental release, it must also raise a factual is-

---

[9]See note 11, *infra.*

[10]The decision in *Lumbermens Mut. Cas. Co.* v. *Belleville Indus.,* 938 F.2d 1423 (1st Cir. 1991), cert. denied, 502 U.S. 1073 (1992), urged on us by Highlands is also inapposite. In that case the court recognized that pollution-prone industries were somewhat different from other businesses. The court recognized that minor spills and mishaps which would clearly be sudden and accidental at an "office building housing company headquarters" would be commonplace occurrences and not "clearly beyond the long-range reasonable expectation of the insured" at a toxic waste reclamation facility. *Id.* at 1427. We do not have that case here. The 1958 fire could well be found by a jury to be "so beyond the pale of reasonable expectability as to be considered 'accidental,' even in a pollution prone industry." Our question is whether the fire had a sufficient causal relationship to the damage at the Re-Solve site to be the basis for liability.

sue as to whether the sudden and accidental release caused an appreciable amount of the damage for which it is being held liable.

Highlands contends that summary judgment is required because Aerovox could not be liable for the result of the 1958 fire as neither Aerovox nor its predecessor were shipping waste to Re-Solve in 1958. This argument misapprehends the way in which liability is calculated under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601 et seq. (1994). Under CERCLA, PRPs are allocated percentages of liability based on factors such as volume, toxicity, mobility, ability to pay, strength of evidence, litigation risks, and aggravating factors. Each PRP is then asked to pay that percentage of the "total cost of response." 42 U.S.C. § 9622 (e)(3)(A). The "total cost of response" includes the cost of remedying all the environmental damage at the site. The allocation of damages is not differentiated by the time when a particular PRP sent contaminated waste to the site or by the waste of a particular PRP. Thus, the fact that Aerovox did not ship waste to Re-Solve before 1973, fifteen years after the fire, does not preclude the possibility that some fraction of the damages Aerovox was asked to pay resulted from the 1958 fire.

Aerovox bears the burden at trial of proving that some of the damages were a result of the 1958 fire. Because Aerovox has not shown an ability to prove a causal link between the fire and any more than a de minimis amount of the damages for which it is now liable, we agree with the motion judge that summary judgment is appropriate. The only proof Aerovox has presented on the question of causation is the affidavit of David Herer, a civil engineer and member of the remediation team at the Re-Solve site. His affidavit states that the fire released a "significant volume"[11] of hazardous contaminants and solvents which "because of persistence and migration" were still causing damage at the time of the policy periods and for which Aerovox was being held liable. The Herer affidavit does tend to show that the fire released contaminants and that they may have caused damage throughout the relevant period. Aerovox must show more than that to make its case. In the context of this case where contaminants were

[11]The main facility and approximately 200 barrels of waste were destroyed in the fire.

regularly released over the course of decades, Aerovox must have a reasonable prospect of showing that the fire caused an appreciable and compensable proportion of the damage. See *Lumbermens Mut. Cas. Co.* v. *Belleville Indus.*, 938 F.2d 1423 (1st Cir. 1991), cert. denied, 502 U.S. 1073 (1992) (reasoning that pollution prone industries cannot be treated exactly like "clean" industries). Although in *Nashua, supra* at 203, we held that a triable issue was presented regarding how much pollution was caused by the sudden and accidental releases, where the damage caused by the releases is so slight in comparison to the rest of the damage as to be de minimis, summary judgment is appropriate.

The fire could only have released at most a small proportion of the contaminants which the facility released over the course of its twenty-four years in operation. The EPA report does not even mention the fire, but identifies four sources of contamination which were part of the everyday operation of the facility. The Herer affidavit does not specify the amount or nature of the damage from the fire in relationship to the damage caused by the regular, long-term release of large volumes of pollution in the course of ordinary operations of the plant. It does not indicate whether greater total damage was done at the site because of the fire, nor does it indicate there is a way to make such a judgment that is not speculative. Based on the inability to produce such evidence, there is no way for a jury to determine that the fire, rather than ordinary business practices caused the damage. Because Aerovox has produced insufficient evidence that the fire was a more than de minimis cause of its liability, we conclude that no "fair-minded jury could return a verdict for [Aerovox] on the evidence presented," *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991), quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and that summary judgment is therefore warranted.[12]

*Judgment affirmed.*

[12]Because we agree with the motion judge that summary judgment is appropriate because of a lack of causation, we need not decide whether summary judgment could be sustained because the 1958 fire created a known loss under *SCA Servs., Inc.* v. *Transportation Ins. Co.*, 419 Mass. 528, 532-533 (1995).