**HOME INDEMNITY CO. v. HOECHST CELANESE CORP.**

[128 N.C. App. 189 (1998)]

THE HOME INDEMNITY COMPANY, THE HOME INSURANCE COMPANY, AND CITY INSURANCE COMPANY, PLAINTIFFS v. HOECHST CELANESE CORPORATION; AETNA CASUALTY & SURETY COMPANY; AIU INSURANCE COMPANY; ALL-STATE INSURANCE COMPANY; AMERICAN CENTENNIAL INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY; AMERICAN MOTORIST INSURANCE COMPANY; AMERICAN PROFESSIONALS INSURANCE COMPANY; AMERICAN RE-INSURANCE COMPANY; ASSOCIATED INTERNATIONAL INSURANCE COMPANY; BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA; CALIFORNIA UNION INSURANCE COMPANY; CENTENNIAL INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYDS LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES; CERTAIN UNDERWRITING SYNDICATES OF THE ILLINOIS INSURANCE EXCHANGE; CERTAIN UNDERWRITING SYNDICATES OF THE INSURANCE EXCHANGE OF THE AMERICAS; CIGNA INSURANCE COMPANY; COLUMBIA CASUALTY COMPANY; COMMERCIAL UNION INSURANCE COMPANIES; CONTINENTAL CASUALTY COMPANY; CONTINENTAL INSURANCE COMPANY; CRUM & FORSTER INSURANCE COMPANY; EMPLOYERS INSURANCE OF WAUSAU, A MUTUAL COMPANY; EMPLOYERS MUTUAL CASUALTY COMPANY; ERIC REINSURANCE COMPANY; EXCESS INSURANCE COMPANY, LIMITED; FEDERAL INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; FREMONT INDEMNITY INSURANCE COMPANY; GIBRALTAR CASUALTY COMPANY; GOVERNMENT EMPLOYEES INSURANCE COMPANY (GEICO); HARBOR INSURANCE COMPANY; HARTFORD ACCIDENT AND INDEMNITY COMPANY; HIGHLANDS INSURANCE COMPANY; HUDSON INSURANCE COMPANY; INSURANCE COMPANY OF NORTH AMERICA; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; INTERNATIONAL SURPLUS LINES INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; LONDON GUARANTEE AND ACCIDENT COMPANY OF NEW YORK; LUMBERMEN'S MUTUAL CASUALTY INSURANCE COMPANY; MEADOWS SYNDICATE, INC.; NATIONAL CASUALTY COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A.; NEW ENGLAND INSURANCE COMPANY; NEW ENGLAND REINSURANCE COMPANY; NORTH RIVER INSURANCE COMPANY; NORTH STAR REINSURANCE CORPORATION; NORTHWESTERN NATIONAL CASUALTY COMPANY; NORTHWESTERN NATIONAL INSURANCE COMPANY; PACIFIC INSURANCE COMPANY; PROGRESSIVE AMERICAN INSURANCE COMPANY; PRUDENTIAL REINSURANCE COMPANY; ROYAL INDEMNITY COMPANY; SIGNAL INSURANCE COMPANY; ST. PAUL FIRE AND MARINE INSURANCE COMPANY; STONEWALL INSURANCE COMPANY; TORTUGA CASUALTY INSURANCE COMPANY; THE TRAVELERS INDEMNITY COMPANY; TWIN CITY FIRE INSURANCE COMPANY; VIK RE SYNDICATE, INC., UNDERWRITERS REINSURANCE COMPANY; UNITED INSURANCE COMPANIES, INC.; X.L. INSURANCE COMPANY LIMITED; ZURICH INSURANCE COMPANY; DEFENDANTS

No. COA97-459

(Filed 6 January 1998)

## 1. Insurance § 895 (NCI4th)— liability insurance—contamination discovered after expiration—no coverage

Under the discovery rule, general liability policies provided no coverage for environmental contamination that was not discovered until after the policies expired.

HOME INDEMNITY CO. v. HOECHST CELANESE CORP.

[128 N.C. App. 189 (1998)]

**2. Insurance § 1300 (NCI4th); Trial § 68 (NCI4th)— liability insurance—admissions—pollution exclusion clause—evidence of policy language—summary judgment**

The insured was bound by its admissions in response to an excess liability insurer's motion for summary judgment that the excess policies incorporated by reference the terms of a primary policy which was properly before the court and that this policy contains a pollution exclusion clause; therefore, the insured could not avoid summary judgment for the excess insurer as to noncoverage of environmental contamination claims on the ground that the insurer did not file any evidence of policy language.

**3. Insurance § 1300 (NCI4th)— excess liability insurance— no evidence of policy language—summary judgment for insurer inappropriate**

There was insufficient evidence of record to support summary judgment for an excess liability insurer as to policies for which the insurer submitted no evidence of policy language and no evidence that these policies followed form to or incorporated by reference the underlying primary policies.

**4. Insurance § 1300 (NCI4th)— excess liability insurance— declaration pages—authentication by attorneys—noncoverage of contamination claims—summary judgment**

There was sufficient evidence of record to support entry of summary judgment in favor of an excess liability insurer as to noncoverage of environmental contamination claims where the insurer submitted declaration pages stating that its policies provided excess coverage by the terms and provisions of the underlying primary policy that was before the court, and the declaration pages were authenticated by the insurer's attorneys.

**5. Trial § 75 (NCI4th)— insurance policies—authentication —affidavits of attorneys**

Affidavits of attorneys of excess liability insurers based upon their personal knowledge were competent to authenticate the excess policies for purposes of summary judgment.

**6. Insurance § 895 (NCI4th)— general liability insurance— pollution exclusion clause—use before approval by Commissioner of Insurance—subsequent approval—clause not void**

Failure of insurers to get advance approval from the Commissioner of Insurance for an absolute pollution exclusion

HOME INDEMNITY CO. v. HOECHST CELANESE CORP.

[128 N.C. App. 189 (1998)]

clause in general liability policies did not render the clause void where the clause was subsequently approved for use.

**7. Insurance §§ 895, 1300 (NCI4th)— liability insurance— pollution exclusion clause—sudden and accidental exception—burden of proof**

The insured bears the burden of proving that the "sudden and accidental" exception to the pollution exclusion clause in a general liability policy applies to restore coverage.

**8. Insurance §§ 895 (NCI4th)— liability insurance—pollution exclusion clause—sudden and accidental exception—gradual contamination**

The "sudden and accidental" exception to the pollution exclusion clause does not restore insurance for pollution contamination which occurs gradually over an extended period of time.

**9. Insurance § 895 (NCI4th)— liability insurance—pollution exclusion clause—sudden and accidental exception—spills or leaks over time**

Spills or leaks which occurred on a regular or sporadic basis during the day-to-day operations of a polyester manufacturing plant over an extended period of time did not come within the "sudden and accidental" exception to the pollution exclusion clause.

**10. Insurance § 895 (NCI4th)— liability insurance—fire at manufacturing plant—de minimis contamination—sudden and accidental exception inapplicable**

A fire at a polyester manufacturing plant did not constitute a sudden and accidental discharge that restored insurance coverage for pollution contamination where the insured failed to forecast evidence that the fire caused anything more than a de minimis amount of the total contamination.

Appeal by defendant Hoechst Celanese Corporation from order entered 21 November 1996 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 November 1996.

This appeal involves insurance coverage for contamination claims under primary and excess general liability policies issued to the insured, Hoechst Celanese Corporation ("HCC") by 25 insurance carriers. Because the property in question is located in North

Carolina, the appellees contend that G.S. 58-3-1 requires that North Carolina law applies. For purposes of this appeal which concerns only North Carolina sites, HCC does not contest that North Carolina law applies.

HCC has owned and operated a polyester manufacturing plant in Salisbury, North Carolina, since 1966. Pollutants generated in the normal course of operation have included glycol and Dowtherm. Glycol was disposed of at an on-site treatment plant from 1969 through 1974. HCC has also operated an on-site wastewater treatment plant since 1966. From 1966 through April 1990, the Salisbury plant also disposed of its waste at a nearby off-site landfill known as the Needmore Road landfill.

HCC's manufacturing operations at the Salisbury plant and disposal of waste at the Needmore Road landfill caused degradation of soil and groundwater. Glycol and Dowtherm were among the constituent contaminants identified in the groundwater. On 28 April 1988, the State of North Carolina issued two notices of non-compliance to HCC concerning the contamination of groundwater beneath the Salisbury Plant and the Needmore Road landfill. On 6 April 1990, the United States Environmental Protection Agency ("EPA") issued an administrative order directing further cleanup and investigation of the Salisbury Plant site. HCC has also been operating under a state mandate to clean up the contamination at the Needmore Road landfill. HCC seeks to recover the costs of environmental investigation, remediation and cleanup, aggregating over $30 million for expenses at the Salisbury Plant and over $15 million for expenses at the Needmore Road landfill.

HCC filed suit in New Jersey on seeking a determination that primary insurance policies issued to HCC cover the claims. On 9 March 1989, Home Indemnity Company ("Home"), one of the defendants in the New Jersey action, filed this action in North Carolina seeking a declaratory judgment on the same insurance policies and claims. Home named HCC as defendants, as well as all of HCC's primary and excess liability insurance carriers. In August 1989, this case was stayed to allow the New Jersey case to proceed, but that stay was lifted in December 1992.

On 15 March 1996, Home moved for partial summary judgment concerning claims arising from the site in Salisbury, North Carolina, which consists of the HCC plant in Salisbury and the Needmore Road landfill. Home argued that: (1) policies in effect from 1972 through

## HOME INDEMNITY CO. v. HOECHST CELANESE CORP.

[128 N.C. App. 189 (1998)]

1976 are not triggered by claims arising from property damage that occurred during those years because the contamination was not discovered until after the policies expired; and (2) pollution exclusions with exceptions for sudden and accidental releases bar coverage for claims arising from the Salisbury site. On 29 March 1996, defendants Lloyds London and Certain London Market Insurance Companies ("Lloyds") moved for partial summary judgment concerning the Salisbury site. Their motion was based on "absolute pollution exclusions" contained in certain Lloyds' policies. Following a hearing on 22 and 23 July 1996, partial summary judgment was entered in favor of both Home and Lloyds on 28 August 1996. The trial court certified the issues raised by the motions for immediate appeal pursuant to G.S. 1A-1, Rule 54(b). HCC appealed here as well as in 96-1408 and 96-1435. Those appeals are determined in opinions filed today.

In August and September 1996, the 25 insurance company defendants here moved to join in the partial summary judgment motions filed by Home and Lloyds. On 21 November 1996, the trial court granted partial summary judgment for the parties joining in the Home and Lloyds' motions. The trial court certified these issues for immediate appeal. HCC appealed on 19 December 1996. Motions to bypass this court were denied by the Supreme Court.

*Parker, Poe, Adams & Bernstein, L.L.P., by Irvin W. Hankins, III and Josephine H. Hicks, for defendant-appellant Hoechst Celanese Corporation.*

*Lowenstein, Sandler, Kohl, Fisher & Boylan, by Michael Dore and David Field, for defendant-appellant Hoechst Celanese Corporation.*

*The Bishop Law Firm, P.A., by J. Daniel Bishop, for defendant-appellee Travelers Casualty and Surety Company formerly known as The Aetna Casualty and Surety Company.*

*Weissman, Nowack, Curry & Wilco, by Linda B. Foster, for defendant-appellee Travelers Casualty and Surety Company formerly known as The Aetna Casualty and Surety Company.*

*Underwood, Kinsey, Warren & Tucker, P.A., by Ralph Kinsey, for defendant-appellee Aetna Casualty and Surety Company.*

*Cozen & O'Connor, P.C., by Sheldon Karasik, for defendant-appellees American International Underwriter's Inc., American Home Assurance Company, Birmingham Fire Insurance*

HOME INDEMNITY CO. v. HOECHST CELANESE CORP.

[128 N.C. App. 189 (1998)]

*Company of Pennsylvania, Insurance Company of the State of Pennsylvania, Lexington Insurance Company and National Union Fire Company of Pittsburgh, PA.*

*Robinson, Bradshaw & Hinson, P.A., R. Steven DeGeorge, for defendant-appellees AIU Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa.*

*Jackson & Campbell, P.C., by Richard S. Kuhl for defendant-appellees AIU Insurance Company, Birmingham Fire Insurance Company of Pennsylvania, The Insurance Company of the State of Pennsylvania, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa.*

*Stott, Hollowell, Palmer & Windham, by Martha R. Thompson, for defendant-appellees American Motorists Insurance Company and Lumbermen's Mutual Casualty Company.*

*Tressler, Soderstrom, Maloney & Priess, by Judith Fournie Helms, Sherrin Ross Ingram and James Pinderski, for defendant-appellees American Motorists Insurance Company and Lumbermen's Mutual Casualty Company.*

*Smith, Stratton, Wise, Heher & Brennan, by Wendy L. Mager, for defendant-appellee Centennial Insurance Company.*

*Frazier, Frazier & Mahler, by Torin L. Fury, for defendant-appellee Centennial Insurance Company.*

*Cohn & Russell, by Vicky Kaiser Russell, for defendant-appellee Century Indemnity Company, successor to CCI Insurance Company, successor to Insurance Company of North America.*

*Law Office of Mark A. Michael, by Mark A. Michael, for defendant-appellee Century Indemnity Company, successor to CCI Insurance Company, successor to Insurance Company of North America.*

*Mendes & Mount, LLP, by Gary P. Schulz and Henry Lee, for defendant-appellee Certain Underwriters at Lloyds London and Certain London Market Insurance Companies.*

*Kilpatrick Stockton, LLP, by Jackson N. Steele and Richard E. Morton, for defendant-appellee Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies.*

*Rivkin, Radler & Kremer, by Richard S. Feldman and Leonard B. Cooper, for defendant-appellees Commercial Union Insurance Company and Fireman's Fund Insurance Company.*

*Bennett, Dawson & Guthrie, by Richard Bennett, for defendant-appellees Commercial Union Insurance Company and Fireman's Fund Insurance Company.*

*McElroy, Deutsch & Mulvaney, by Laurence McHeffey and Robert S. Albert, for defendant-appellees North River Insurance Company, Carum & Forster Insurance Company and International Surplus Lines Insurance Company.*

*Hill, Evans, Duncan, Jordan & Davis, by Lindsay R. Davis, Jr., for defendant-appellees North River Insurance Company, Carum & Forster Insurance Company and International Surplus Lines Insurance Company.*

*Tuggle, Duggins & Meschan, P.A., by J. Reed Johnston, Jr., for defendant-appellee Employers Mutual Casualty Company.*

*Robins, Kaplan, Miller & Ceresi, by Thomas B. Keegan and Timothy M. Block, for defendant-appellee Employers Mutual Casualty Company.*

*Cranfill, Sumner & Hartzog, L.L.P., by Stephanie Hutchins Autry, for defendant-appellee Federal Insurance Company.*

*Melito & Adolfsen, P.C., by Louis G. Adolfsen, for defendant-appellees Hartford Accident & Indemnity Company, First State Insurance Company, New England Insurance Company and Twin City Fire Insurance Company.*

*Cansler, Lockhart, Campbell, Evans, Bryant & Garlitz, P.A., by Hugh B. Campbell, for defendant-appellees Hartford Accident & Indemnity Company, First State Insurance Company, New England Insurance Company and Twin City Fire Insurance Company.*

*Leboeuf, Lamb, Greene & MacRae, by David R. Poe and Elizabeth B. Sandza, for defendant-appellee Hudson Insurance Company.*

*German, Gallagher & Murtagh, by Michael D. Gallagher and Jeffrey N. German, for defendant-appellee Stonewall Insurance Company.*

*Rudisill & Brackett by J. Steven Brackett, for defendant-appellee Stonewall Insurance Company.*

*Hedrick, Eatman, Gardner & Kincheloe, by John Brem Smith, for defendant-appellees Associated International Insurance Company and Progressive American Insurance Companies.*

EAGLES, Judge.

I

**[1]** We first consider whether the trial court erred in granting partial summary judgment on the grounds that coverage under the policies was not triggered by claims arising from property damage that occurred during the years in which the policies were in effect because the contamination was not discovered until after the policies expired.

In our companion opinion (96-1435) we have reaffirmed that *West American Ins. Co. v. Tufco Flooring East, Inc.*, 104 N.C. App. 312, 409 S.E.2d 692 (1991), *review allowed*, 330 N.C. 853, 413 S.E.2d 555, *review denied as improvidently granted*, 332 N.C. 479, 420 S.E.2d 826 (1992), in which this court applied the discovery rule to a property damage case, is the law of North Carolina in this factual situation. The discovery rule mandates that "for insurance purposes, property damage 'occurs' when it is manifested or discovered." *Id.* at 317, 409 S.E.2d at 695 (quoting *Mraz v. Canadian Universal Ins. Co.*, 804 F.2d 1325, 1328 (4th Cir. 1986). For a more detailed discussion of the arguments presented and this court's reaffirmation of the *Tufco* rule, see our opinion in *The Home Indemnity Co., et al, v. Hoechst Celanese Corp., et al* (96-1435).

By HCC's own responses to interrogatories, it is undisputed that the contamination was first discovered in 1980. Accordingly, based on the *Tufco* rule, it is clear that there can be no coverage for environmental contamination claims under policies that expired prior to 1980. In accordance with *Tufco*, we conclude that summary judgment was properly granted here for the following policies:

Aetna Casualty & Surety Company policy nos. 01XN171, 01XN707, 01XN867, 01XN868, 01XN1288, 01XN1576 and 01XN1682; American Home Assurance Company policy nos. CE2692030, CE2692031, CE2749507, CE2749508, CE355391, CE355392 and 8065544; American Motorists Insurance Company policy nos. 4ZM549159, 1CP-60143, 1CP-60435 and 3SB-005287;

HOME INDEMNITY CO. v. HOECHST CELANESE CORP.

[128 N.C. App. 189 (1998)]

Centennial Insurance Company policy no. 462-01-31-57; Century Indemnity Company, Successor-in-Interest to CCI Insurance Company, Successor to Insurance Company of North America policy nos. XCP3753 and XBC042141; Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies policy nos. 89022, 89023, 89024, 89025, 50046, 52160, 52161, 52164, 52165, 53760, 55240, 55330, 55331, 55332, 55333, 55334, NF0860, NF0861, NF0864, NC4720 and NC5082; Commercial Union Insurance Company policy nos. 131LC2, 131LC3, 131LC4, 131LC10, 131LC11, CY-9500-002, CY-9500-034 and EY-9500-044; all Crum & Forster Insurance Company policies; Employers Mutual Casualty Company policy no. MMO 70027; Federal Insurance Company policy nos. 77378655 and FXL77378655; Fireman's Fund Insurance Company policy nos. XLX1202840 and XLX1269429; First State Insurance Company policy nos. 920298, 922376, 925974, 928017, 920878, 921283 and 923489; Hartford Accident & Indemnity Company policy no. 10XS100583; Insurance Company of the State of Pennsylvania policy nos. 41735440 and 41735441; International Surplus Lines Insurance Company policy nos. XSI1522 and XSI1523; Lexington Insurance Company policy nos. GL403087; GC403095, GC403374, C5504670, 5511228 and 500-00-24; Lumbermen's Mutual Casualty Company policy no. 5XS-010318; National Union Fire Insurance Company policy nos. 1170170 and 1170174; North River Insurance Company XS3708 and XS4429; Progressive American Insurance Company policy nos. SP-1157 and SP-1158; and Stonewall Insurance Company policy nos. D11514, D11515 and D11516.

Based on our disposition of this issue, we need not consider the remaining issues concerning the above listed policies because the remaining issues have been rendered moot.

II

We next consider whether the trial court erred in granting partial summary judgment when the motion was based on insurance policy language which HCC contends was not properly before the court. HCC argues that there is no admissible or competent evidence of record concerning any language in any insurance policy issued to HCC. First, HCC contends that some carriers relied on policy provisions in seeking partial summary judgment but did not file any evidence of policy language. Second, they contend that other carriers

submitted copies of declaration pages with no evidence of policy language. Some of these were submitted without an affidavit. Finally, HCC argues that many carriers submitted copies of policies in support of their motions, some without an affidavit and others with affidavits from a lawyer who had no personal knowledge of the policies. Accordingly, HCC contends that because these carriers failed to produce any evidence that complies with Rule 56, the carriers failed to establish any ground for avoiding coverage for purposes of sustaining entry of partial summary judgment.

HCC's first argument, that some carriers did not file any evidence of policy language when seeking summary judgment, pertains only to certain policies of appellee North River Insurance Company ("North River"), because our determination in Part I, the *Tufco* discovery rule, was dispositive as to the policies of appellees Stonewall Insurance Company, Crum & Forster Insurance Company & International Surplus Lines Insurance Company. North River first argues that HCC waived objections based on lack of adequate "evidence" to sustain partial summary judgment by failing to object in its responses to the motions and by proceeding with the summary judgment hearing without objection. Second, they argue that their summary judgment motion could have been made with or without affidavits and that HCC itself admitted sufficient facts to justify the trial court's entry of summary judgment. North River asserts that HCC alleged that North River issued excess policies to HCC, and that the primary policies to which North River's policies were excess were already before the trial court. Furthermore, North River notes that HCC made the pollution exclusions under many of those primary policies part of the record through the affidavits of Randy Weston and Gary Schultz. Accordingly, North River asserts that all relevant policy language necessary for a proper determination of the summary judgment issue was properly before the trial court. Further, North River asserts that HCC did not contest the fact that policies were excess to and followed form to the primary or underlying excess policies in effect during the relevant policy periods. Accordingly, the appellees contend that summary judgment was properly granted.

**[2],[3]**  We hold that there was sufficient evidence of record to support summary judgment in favor of North River on policy nos. 522-046851-3, 522-046852-2, 522-043223-4 and 522-055111-5. In HCC's response to North River's motion to join in Home's summary judgment motion, HCC admits that these policies at issue incorporate by reference the terms of Employers Insurance of Waussau policy number 5735-00-100731, and that the policy contains a "sudden and acciden-

tal" pollution exclusion. The Wausau policy was properly before the court. In HCC's response to North River's motion to join in Lloyds' summary judgment motion, HCC admits that "[p]olicy no. 522-055111-5 contains an 'absolute' pollution exclusion precluding coverage for claims arising from pollution or contamination." HCC is bound by these admissions. Accordingly, there was sufficient evidence of record to support summary judgment in favor of North River as to those policies. However, there was insufficient evidence of record to support summary judgment in favor of North River on policy nos. 522-000-423-9 and 522-000445-5. As the moving party, the appellees must show that there are no factual issues in dispute and "no gaps" in their proof. *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721, 329 S.E.2d 728, 729 (1985). These appellees submitted no evidence of policy language to support their motions for summary judgment. While these policies may have been excess to underlying primary policies that were properly before the court, there was no evidence before the court that these policies followed form to or incorporated by reference those underlying policies. Accordingly, there remain genuine issues of material fact concerning the language of policy nos. 522-000-423-9 and 522-000445-5. The appellees failed to meet their burden of proof. We hold that summary judgment as to policy nos. 522-000-423-9 and 522-000445-5 should not have been granted based on policy language.

HCC's second argument pertains only to certain policies of appellee Federal Insurance Company ("Federal"), because our determination in Part I, the *Tufco* discovery rule, was dispositive as to the policies of appellees American Motorists Insurance Company and Lumbermen's Mutual Casualty Company. Federal argues that their declaration pages stated that the policies followed form to certain underlying Lloyds' policies and were thereby incorporated. Federal contends that appellees' attorneys properly authenticated their evidence, based on their personal knowledge that the declaration pages and policies were authentic. Federal notes that the decision to admit evidence is discretionary and there is no indication that the judge abused his discretion. Finally, the appellees argue that HCC never raised any genuine issue as to the accuracy, completeness, or authenticity of the policies. Only the interpretation of the policies and application of the facts were at issue. Accordingly, Federal maintains that summary judgment was properly granted.

[4] Federal submitted declaration pages stating that their policies provided excess coverage by the terms and provisions of the under-

lying primary policy. The declaration pages were authenticated by their attorneys. *See Lockwood v. Wolf Corp.*, 629 F.2d 603, 611 (9th Cir. 1980) (attorney's affidavit is proper where the attorney has personal knowledge of the matters attested to in the affidavit). We hold that the trial court did not abuse its discretion in admitting and considering the evidence. Accordingly, there was sufficient evidence of record to support entry of summary judgment for Federal as to its policies.

[5] HCC's third argument pertains to the policies of appellees New England Insurance Company, American International Underwriters (AIU), Birmingham Fire Insurance Company of Pennsylvania, Twin City Fire Insurance Company, Associated International Insurance Company, and with respect to certain policies of National Union Fire Insurance Company, Lexington Insurance Company, First State Insurance Company, Employers Mutual Casualty Company, Hartford Accident & Indemnity Company, and Lloyds only. Our determination in Part I, the *Tufco* discovery rule, was dispositive as to the policies of appellees Insurance Company of Pennsylvania, Century Indemnity Company, Centennial Insurance Company and Progressive American Insurance Company. The remaining appellees assert that there is no evidence that the trial court abused its discretion in admitting the evidence. First, they argue that the attorneys' affidavits clearly comply with Rule 56(e) in that they are based on personal knowledge of the affiant, gained from representing in litigation the very insurance companies that issued the policies under consideration. Second, the appellees argue that HCC has not raised any genuine issue of material fact as to the accuracy or completeness of the policy language cited. Since the dispute involves only the interpretation of the excess policies' language and application of the policy language to the facts and not whether the language was actually contained in the policies themselves, the appellees argue that summary judgment was proper.

The attorneys' affidavits based on personal knowledge were competent to authenticate the policies and there was no genuine issue of material fact as to the relevant language. *See Lockwood*, 629 F.2d at 611. Accordingly, we hold there was sufficient evidence of record to support summary judgment for those policies. This assignment of error is overruled.

### III

We next consider whether pollution exclusions contained in policies are rendered unenforceable because the policies with the exclu-

sions were issued before being approved by the North Carolina Department of Insurance. HCC first argues that certain appellees used pollution exclusion language in policies issued before the pollution exclusion language was approved by the North Carolina Insurance Commissioner on 9 July 1973. Because of our determination in Part I, the *Tufco* discovery rule, this issue is moot and we need not address it.

[6] HCC additionally argues that certain appellees included absolute pollution exclusion language in policies issued before that language was approved by the North Carolina Insurance Commissioner on 24 February 1986. HCC maintains that the unapproved language should be void and unenforceable. In our companion opinion (96-1408) we determined that the failure of insurers to get advance form approval where the form is subsequently approved for use does not result in the absolute pollution exclusion being void. For more detailed discussion of the arguments presented and this court's analysis, see our opinion in *The Home Indemnity Co., et al, v. Hoechst Celanese Corp., et al* (96-1408). Accordingly, we hold that the policy should be enforced as written including the pollution exclusion language.

## IV

We next consider whether the trial court properly granted partial summary judgment on the grounds that the claims were precluded by pollution exclusions contained in the policies. HCC contends that the carriers, as the moving party and insurer, had the burden of proving that the pollution exclusion language in its policies precludes coverage for HCC at the Salisbury site. HCC first argues that the language in many of the policies' pollution exclusions states that the "exclusion does not apply if" contamination is "sudden and accidental." HCC asserts that the evidence demonstrates that at least some of the damages at the site arise from releases that were "sudden and accidental." Furthermore, HCC maintains that other courts have concluded that where the facts show that there were discrete accidents, summary judgment is inappropriate. *See, e.g., Cessna Aircraft Co. v. Hartford Acc. & Indem. Co.*, 900 F.Supp. 1489 (D. Kan. 1995). HCC contends that the sudden nature of many of the releases and the extent of contamination caused by these accidents are unresolved issues of fact, rendering summary judgment inappropriate.

HCC also argues that some of the appellees joined in the Home summary judgment motion on the basis of significantly different pollution exclusion language. HCC claims that some of these policies

contained pollution exclusions providing exceptions for "sudden **or** accidental" releases (emphasis added). HCC maintains that there is no dispute that the releases were accidental and accordingly the trial court erred in granting partial summary judgment to those companies. However, our determination in Part I, the *Tufco* discovery rule, was dispositive as to the claims based on all those policies which contained an exception to the pollution exclusion for "sudden or accidental" releases. Accordingly, we need not address this issue because it has become moot.

The appellees argue that the pollution exclusion applies based on its plain language. Appellees contend that North Carolina courts have stated that pollution which occurs gradually over time on an ongoing basis and are routine events is not "sudden and accidental" and does not fall under the exception to the exclusion. *See Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 696-701, 340 S.E.2d 374, 380-83, *rehearing denied*, 316 N.C. 386, 346 S.E.2d. 134 (1986). Furthermore, appellees argue that the insured must not only show that a release was sudden and accidental but the insured must also show that the release caused an appreciable amount of the damage and was not a de minimis event. The appellees contend that HCC's evidence of the fire at the Dowtherm Heater Area is speculative at best. *See Highlands Ins. Co. v. Aerovox Inc.*, 424 Mass. 226, 676 N.E.2d 801 (Mass. 1997). Accordingly, the carriers argue that summary judgment was properly granted.

**[7]** HCC and the appellees each assert that the other bears the burden of proof on the issue of whether the "sudden and accidental" exception to the pollution exclusion applies to restore coverage excluded under the pollution exclusions. The vast majority of courts have held that the insurer bears the burden of establishing the existence and applicability of a policy exclusion, while the insured has the burden of proving that an exception to the exclusion exists and applies to restore coverage. See *Peerless Ins. Co. v. Strother*, 765 F. Supp. 866, 871 (E.D.N.C. 1990). *See also SnyderGeneral Corp. v. Great American Ins. Co.*, 928 F.Supp. 674, 680 n.5 (N.D. Tex. 1996). We agree and hold that HCC bears the burden of proving that the sudden and accidental exception to the pollution exclusion applies here to restore coverage.

**[8],[9]** We hold that HCC has failed to carry its burden of proving that the exception to the pollution exclusion applies here. The "sudden and accidental" exception was construed by our Supreme Court in

**HOME INDEMNITY CO. v. HOECHST CELANESE CORP.**

[128 N.C. App. 189 (1998)]

*Waste Management* to prohibit insurance coverage for pollution contamination which occurs gradually over an extended period of time. *See Waste Management*, 315 N.C. at 696-701, 340 S.E.2d at 380-83. In upholding the pollution exclusion, the court in *Waste Management* articulated the policy reasons behind the exclusion:

> The policy reasons for the pollution exclusion are obvious: If an insured knows that liability incurred by all manner of negligent or careless spills and releases is covered by his liability policy, he is tempted to diminish his precautions and relax his vigilance . . . . [P]utting the financial responsibility for pollution that may occur over the course of time upon the insured places the responsibility to guard against such occurrences upon the party with the most control over the circumstances most likely to cause the pollution.

*Id.* at 697-98, 340 S.E.2d at 381. Just as in *Waste Management*, most of HCC's claims involve the leaching of contaminants that occurred gradually over an extended period of time. However, HCC has argued that several discrete events occurred, such as releases due to pump seal leaks, gasket failures, etc. which caused contamination and therefore fall within the "sudden and accidental" exception. However, HCC has failed to carry its burden of proving that these events are within the "sudden and accidental" exception. In *Waste Management*, our Supreme Court recognized that discharges that "occurred on a 'regular or sporadic basis from time to time' " are not sudden. *Id.* at 701, 340 S.E.2d at 383 (discussing *Techalloy Co. v. Reliance Ins. Co.*, 338 Pa. Super. 1, 487 A.2d 820 (1984)). Numerous other jurisdictions have also recognized that spills and leaks which have occurred during the day-to-day operations and which present an overall pattern of discharges, are not sudden and accidental. *See Peerless*, 765 F. Supp. at 871 ("allegations suggest a pattern of repetitive activity which led to the environmental pollution").

[10] HCC finally contends that a 1974 fire in the Dowtherm Heater Area was a sudden and accidental discharge. However, the fire falls squarely within the facts of a recently decided Massachusetts case. In *Aerovox*, 424 Mass. at 226, 676 N.E.2d at 801, Massachusetts' highest court determined that:

> Because Aerovox has not shown an ability to prove a causal link between the fire and any more than a de minimis amount of the damages for which it is now liable, we agree with the motion judge that summary judgment is appropriate. The only proof Aerovox has presented on the question of causation is the affi-

davit of David Herer, a civil engineer and member of the remedi-
ation team at the Re-Solve site. His affidavit states that the fire
released a 'significant volume' of hazardous contaminants and
solvents which 'because of persistence and migration' were still
causing damage at the time of the policy periods and for which
Aerovox was being held liable. The Herer affidavit does tend to
show that the fire released contaminants and that they may have
caused damage throughout the relevant period. Aerovox must
show more than that to make its case. In the context of this case
where contaminants were regularly released over the course of
decades, Aerovox must have a reasonable prospect of showing
that the fire caused an appreciable and compensable proportion
of the damage . . . . The fire could only have released at most a
small proportion of the contaminants which the facility released
over the course of its twenty-four years in operation . . . .The
Herer affidavit does not specify the amount or nature of the dam-
age from the fire in relationship to the damage caused by the reg-
ular, long-term release of large volumes of pollution in the course
of ordinary operations of the plant. It does not indicate whether
greater total damage was done at the site because of the fire, nor
does it indicate there is a way to make such a judgment that is not
speculative. Based on the inability to produce such evidence,
there is no way for a jury to determine that the fire, rather than
ordinary business practices caused the damage. Because Aerovox
has produced insufficient evidence that the fire was a more than
de minimis cause of its liability, we conclude that no 'fair-minded
jury could return a verdict for [Aerovox] on the evidence pre-
sented' and that summary judgment is therefore warranted.

*Id.* at 234-35, 676 N.E.2d at 806-07 (citations omitted). HCC has failed
in their forecast of evidence to support their contention that the fire
was a sudden and accidental event that caused an appreciable
amount of the contamination HCC is being required to clean up. HCC
bases its arguments on the testimony of two HCC employees, Steve
Simpson and Michael Freeze. Simpson and Freeze were unable to say
how much Dowtherm was released in connection with the fire, only
that in hindsight, they believed it contributed to soil and groundwater
contamination. HCC also relies on an accident report prepared by its
Salisbury plant manager in 1974. However, the report makes no men-
tion of any Dowtherm on the ground or any soil or groundwater con-
tamination. Just as in *Aerovox*, HCC has presented evidence that the
fire released contaminants that may have caused some damage.

However, HCC has failed to forecast evidence that the damages caused by the fire were anything more than a de minimis amount of the total contamination. Furthermore, HCC has failed to forecast anything more than speculative evidence on the issue.

Accordingly, because HCC has not carried its burden of proving that the "sudden and accidental" exception restores coverage for the contamination, we hold that summary judgment was properly granted.

In conclusion, we affirm summary judgment as to all parties and policies except for North River policy nos. 522-000423-9 and 522-000445-5. We reverse partial summary judgment in the two North River policies because there was insufficient evidence of record to support the trial court's grant of summary judgment on those policies.

Affirmed in part, reversed and remanded in part.

Judges WYNN and MARTIN, Mark D., concur.