NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-401                                            Appeals Court

WINBROOK COMMUNICATION SERVICES, INC., & others[1]  vs.  UNITED STATES LIABILITY INSURANCE COMPANY.

No. 15-P-401.

Suffolk.     March 8, 2016. - June 14, 2016.

Present:  Hanlon, Sullivan, & Massing, JJ.


Practice, Civil, Default, Summary judgment.  Insurance, Coverage, Insurer's obligation to defend, Construction of policy.  Contract, Insurance, Performance and breach. Damages, Negligent misrepresentation.


Civil action commenced in the Superior Court Department on December 20, 2011.

The case was heard by Geraldine S. Hines, J., on a motion for summary judgment, and a motion for reconsideration and a second motion for summary judgment were heard by Bonnie H. MacLeod, J.


Eric F. Eisenberg for the plaintiffs.
John B. DiSciullo for the defendant.


SULLIVAN, J.  In this insurance coverage dispute we

consider whether the factual record on cross motions for summary

_____

[1] 360 Public Relations LLC; Andrew Wolfendon; Daystar Computer Services, Inc.; Michelle Winder; Opera House Digital; and Sheila Beninati, doing business as Sheila Beninati Design.

judgment is adequate to permit either party to establish entitlement to judgment as matter of law.  Plaintiff Winbrook Communication Services, Inc. (Winbrook[2]), appeals from a summary judgment declaring that the defendant, United States Liability Insurance Company (USLIC), had no obligation under a directors and officers liability policy to pay a judgment obtained by Winbrook against USLIC's insureds, DeSales Group, LLC (DSG), and William York (collectively, DSG).  We conclude that it was error to grant USLIC's motion for summary judgment because there remain genuine issues of material fact as to the applicability of the policy's personal profit exclusion.  More precisely, there is a genuine dispute of material fact whether DSG received any profit, benefit, remuneration, or advantage to which DSG was not legally entitled.  Accordingly, we vacate and remand for further proceedings.

Background.  The procedural history of the litigation is both material and undisputed.  Winbrook filed suit against DSG and York on August 24, 2010, alleging that York had made a series of negligent misrepresentations concerning DSG the entity's financial condition that induced Winbrook to continue to work on the development of a children's storybook series and

---

[2] Unless otherwise noted, "Winbrook" refers, collectively, to all plaintiffs.

associated promotional items.  The series never went to market and Winbrook sued, seeking compensation for work performed.

DSG gave notice to USLIC of Winbrook's claims in advance of suit.  USLIC replied that the policy would not cover the claims. After suit was filed, Winbrook notified USLIC of the suit and of a pending motion for entry of default.  DSG reportedly told USLIC that it did not intend to defend.  USLIC again denied coverage, citing two reasons:  (1) the claims were for the failure to pay contractual debts, and such claims did not allege a "Wrongful Act" as required for coverage under the insuring agreements,[3] and (2) the claims were excluded by exclusion C, the so-called "personal profit exclusion."[4]  USLIC declined to defend under a reservation of rights, and did not seek declaratory relief while the underlying liability action was pending.  DSG defaulted.  After a hearing, a judge of the Superior Court (first judge) adopted proposed findings outlining the claimed

---

[3] The policy defines "Wrongful Act" to include claims of misrepresentation:  "'Wrongful Act' means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties."

[4] Exclusion C states, in pertinent part:

"[USLIC] shall not be liable to make payment for Loss in connection with any Claim made against any Insured arising out of, directly or indirectly resulting from or in consequence of, or in any way involving: . . .

"C.  any of the Insureds gaining in fact any profit, benefit, remuneration or advantage to which such Insured was not legally entitled."

misrepresentations, and Winbrook's calculation of losses. The judge then entered a default judgment in favor of Winbrook in the amount of $597,633.25 plus interest.[5]

With judgment in hand, Winbrook brought this action against USLIC in December of 2011, seeking a declaratory judgment that USLIC is obligated to pay the judgment obtained by Winbrook against DSG, damages for breach of contract as a third-party beneficiary of the insurance contract, and damages for unjust enrichment and for violation of G. L. c. 93A. Winbrook moved for summary judgment, and also moved for a protective order to bar discovery by USLIC. A different Superior Court judge (second judge) concluded that the existence of a claim for misrepresentation was conclusively established in the previous action, and that the claim fell within the coverage provisions of the policy. She granted the motion for a protective order, reasoning that the sole purpose of USLIC's discovery requests was to "marshal additional evidence in support of its position that the insureds are properly liable under a theory of breach of contract, not negligent misrepresentation," and that because that claim was barred by the default, discovery was not warranted. Finally, she determined that there was a genuine

---

[5] Execution issued in the amount of $667,022.09. The judgement was later reduced upon motion of Winbrook to reflect a set-off for monies paid by third parties before the misrepresentations were made.

dispute of material fact as to the applicability of exclusion C, and denied summary judgment.[6]

The summary judgment order was silent as to discovery regarding exclusion C, and neither party sought discovery regarding exclusion C.[7]  Rather, Winbrook filed a request for reconsideration of the summary judgment as to the applicability of exclusion C, and USLIC filed a cross motion for summary judgment.  Winbrook provided additional affidavits in support of the motion for reconsideration, and supplied the record supporting the default judgment.  In opposing Winbrook's motion to reconsider and in supporting its own cross motion for summary judgment, USLIC relied exclusively on materials submitted by Winbrook.

On the basis of the record as supplemented, a third judge of the Superior Court ruled that coverage was barred by

---

[6] USLIC had filed an affidavit in opposition to Winbrook's motion for summary judgment stating, "The record is not developed as to whether [USLIC's] insured reaped wrongful gains as a result of conduct that would be insurable under the Policy."  See Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974).

[7] Under Massachusetts law, an insurer is allowed to contest indemnity even if it has breached its duty to defend, so long as its coverage defense is compatible with the facts to which the insurer is bound.  See Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 360-361 (2011) (insurer bound "as to all matters therein decided which are material to recovery by the insured").  Here, Winbrook's losses were established by the default judgment, but DSG's gains were not at issue in that proceeding.  In other words, DSG's gains were not material to the judgment, and DSG's gains therefore were not conclusively established by the default judgment.  See ibid.

exclusion C because the insureds had reaped a gain "in fact," that is, an advantage or an opportunity to profit. The third judge concluded that the insured had secured an advantage or opportunity, to wit, an extension of credit from Winbrook by persuading Winbrook to work without payment. As a result, the judge ordered the entry of summary judgment in favor of USLIC.

Discussion. The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Commissioners of the Bristol County Mosquito Control Dist. v. State Reclamation & Mosquito Control Bd., 466 Mass. 523, 528 (2013). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). Where, as here, both parties have moved for summary judgment, "the evidence is viewed in the light most favorable to the party against whom judgment is to enter." Albahari v. Zoning Bd. of Appeals of Brewster, 76 Mass. App. Ct. 245, 248 n.4 (2010). See DiLiddo v. Oxford St. Realty, Inc., 450 Mass. 66, 70 (2007). "We review a decision to grant summary judgment de novo." Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012).

1. Wrongful act. USLIC urges us to affirm the summary judgment on the basis that the claims asserted against DSG did not fall within the insuring agreements of the policy, a claim

that the second judge rejected. See Aetna Cas. & Sur. Co. v. Continental Cas. Co., 413 Mass. 730, 734-735 (1992) (prevailing party may argue that judge was "right for the wrong reason"). USLIC contends that the second judge erred in concluding that the claim fell within the definition of a "Wrongful Act" because the damages sought arose out of a breach of contract and the policy does not insure trade debt.

"Where, as here, the plaintiff in the underlying action brings a negligence claim and the factual allegations in the complaint are sufficient to support such a claim, the default judgment conclusively establishes negligence as to the defendant insured and, if the insurer has committed a breach of its duty to defend, as to the insurer." Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 360 (2011), citing MacBey v. Hartford Acc. & Indem. Co., 292 Mass. 105, 106 (1935). See, e.g., Miller v. United States Fid. & Guar. Co., 291 Mass 445, 448 (1935) ("Where an action against the insured is ostensibly within the terms of the policy, the insurer, whether it assumes the defense or refuses to assume it, is bound by the result of that action as to all matters therein decided which are material to recovery").

Here, a default judgment entered against the insured on a claim of negligent misrepresentation. USLIC, which was on notice of the action by Winbrook but disclaimed coverage and

declined to defend without first obtaining a judicial declaration, was bound by the default judgment.  See Blais v. Quincy Mut. Fire Ins. Co., 361 Mass. 68, 70-71 (1972) ("[A]n indemnitor, after notice and an opportunity to defend, is bound by material facts established in an action against the indemnitee. . . .  In the absence of fraud or collusion the insurer would be bound by a judgment entered by default").

On appeal USLIC contends that the second judge applied the doctrine of res judicata in error.  This argument misapprehends the basis of the judges' rulings.[8]  "[USLIC] may be bound . . . if it committed a breach of its duty to defend, because 'an insurer who has wrongfully refused to defend its insured cannot relitigate coverage issues.'"  Metropolitan Prop. & Cas. Ins. Co., supra at 361 n.10, quoting from Maimaron v. Commonwealth, 449 Mass. 167, 175 (2007).  A breach of the duty to defend "trigger[s] a duty to indemnify" because the insurer is bound by the result in the underlying action "as to all matters therein decided which are material to recovery by the insured."  Id. at 360.

---

[8] Although the second judge did not expressly address the duty to defend, we understand her ruling to have encompassed an implicit determination of the duty to defend, which was essential to her conclusion that USLIC was bound by the default judgment.  On appeal, USLIC urges us to decide the question of coverage as a matter of law based on the definition of "Wrongful Acts."  USLIC does not argue that it was relieved of the duty to defend because of any exclusion.  Contrast Metropolitan Prop. & Cas. Ins. Co., supra at 361-362.

USLIC responds that the lack of coverage is so evident on the face of the Winbrook complaint against DSG that it had no duty either to defend or to indemnify.  See generally United Natl. Ins. Co. v. Parish, 48 Mass. App. Ct. 67, 70-73 (1999). "[The] duty to defend is independent from, and broader than, [the insurer's] duty to indemnify."  Metropolitan Prop. & Cas. Ins. Co., supra at 357 (citation omitted).  "In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage."  Preferred Mut. Ins. Co. v. Vermont Mut. Ins. Co., 87 Mass. App. Ct. 510, 513 (2015) (citation omitted).

The wrongful act provision of the policy here expressly covered claims of negligent misrepresentation.  See note 3, supra.  The complaint against DSG alleged negligent misrepresentation by DSG.  The complaint contained no allegation that a contract existed, or that DSG had breached a contract.[9] Rather, the complaint alleged that Winbrook was duped into continuing to develop a product on the basis of promises of future payment at a time when the promises were negligently made.  The operative source of the injury alleged was the misrepresentation, not a contract or other preexisting

---

[9] The policy excluded claims arising out of a breach of contract as to DSG, the entity, but not as to York as an individual.

obligation.[10]  The fact that the damages sought for the covered negligence claim -- the cost of the goods and services produced -- were based on invoices did not place the allegations of the complaint wholly outside of the coverage provisions of the policy.  See ibid.  The policy contained no general exclusion for damages for a wrongful act -- such as misrepresentation -- simply because those damages also might be similar or equivalent to contract damages.

"We do not disagree that the underlying factual allegations of a complaint are a better gauge for assessing potential coverage than conclusory theoretical labels squarely at odds with those facts. . . .  Here, however, the labels are not at odds with [the] factual allegations."  Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., 81 Mass. App. Ct. 40, 50 (2011).  Because USLIC owed its insureds a duty to defend under the policy, and breached that duty, it was bound by the default judgment.

2.  Exclusion C.  The third judge granted summary judgment on the duty to indemnify on the basis that there were no material facts in dispute as to Winbrook's gains, and that

_____

[10] For this reason USLIC's reliance on Pacific Ins. Co. v. Eaton Vance Mgmt., 369 F.3d 584 (1st Cir. 2004), is also misplaced.  In Pacific Ins. Co., supra at 591, it was conceded that the insured had a preexisting and ongoing obligation to make the pension payments at issue.  Here there is no allegation evident from the face of the complaint that DSG had an ongoing obligation to provide goods or services.

exclusion C barred coverage. Winbrook submits that DSG did not in fact gain any profit, benefit, remuneration, or advantage because (1) DSG never received any of the goods Winbrook produced, and (2) the plain meaning of the phrase "in fact" does not encompass the mere opportunity to gain a profit, benefit, remuneration, or advantage. In addition, to the extent an opportunity can be considered a benefit or an advantage in fact, Winbrook argues that the opportunity must be "objectively real" and not merely possible.

"The proper interpretation of an insurance policy is a matter of law to be decided by a court." Boazova, 462 Mass. at 350. Terms of an insurance policy must be interpreted in accordance with the "fair meaning of the language used, as applied to the subject matter." Davis v. Allstate Ins. Co., 434 Mass. 174, 179 (2001) (citation omitted). "Doubts created by any ambiguous words or provisions are to be resolved against the insurer." City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, 640 (2006). A term or policy provision is ambiguous "only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Barnstable v. American Financial Corp., 51 Mass. App. Ct. 213, 215 (2001). However, an exclusionary clause "may be ambiguous . . . when read in the context of the entire policy or as applied to the subject

matter." Ibid. "Exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured." City Fuel Corp., supra.

There is no Massachusetts case law construing exclusion C, nor the phrase "in fact" as it appears within exclusion C. Winbrook principally relies on and distinguishes two Federal cases that have interpreted the meaning of the language in similar or identical personal profit exclusions to mean potential, not just actual, business opportunities. See TIG Specialty Ins. Co. v. PinkMonkey.com Inc., 375 F.3d 365, 370-371 (5th Cir. 2004); Jarvis Christian College v. National Union Fire Ins. Co. of Pittsburgh, Penn., 197 F.3d 742, 747-749 (5th Cir. 1999).

In Jarvis Christian College, the insured wrongfully induced the transfer of $2 million to a company in which he owned a forty-nine percent interest, without disclosing that interest. 197 F.3d at 744-745. The court concluded that this transfer constituted an "advantage in fact" sufficient to trigger an identical exclusion because an advantage "encompasses any gain or benefit, such as an opportunity to make a profit." Id. at 748, 749. The court reasoned that the cash infusion created an opportunity for the business to "grow and prosper, and also to gain credibility with other companies," and that the insured

"would become the owner of a successful business," thus creating a "personal advantage." Id. at 747. Even though the insured's company operated at a net loss, the $2 million "created a viable opportunity for his business, and therefore himself as well, to make a profit." Id. at 748.

Similarly, in TIG Specialty Ins. Co., supra at 369, the insured had been convicted of stock fraud. The conviction meant that the jury found that the insured "benefitted from the false representation or promise." Id. at 370. Citing Jarvis Christian College, the court concluded that, as a result of the stock fraud, the insured "gained a personal advantage from the opportunity to own and participate in a successful business." Ibid.

We agree with the United States Court of Appeals for the Fifth Circuit and conclude that an opportunity may constitute an advantage in fact sufficient to trigger exclusion C. Exclusion C specifically references "profit, benefit, remuneration or advantage" (emphasis supplied). As the court reasoned in Jarvis Christian College, certain actions, such as the direct infusion of capital or, as here, the extension of trade credit and production of goods, may create an advantage in the form of opportunity for a business to attract capital or customers.

Our analysis does not end there, however. The case was heard on cross motions for summary judgment, but the record does

not indicate whether DSG enjoyed such an advantage.  This vacuum was created by Winbrook's successful motion for a protective order, an order that was predicated on the fact that discovery, at that time, was directed to fleshing out the existence of a contract between DSG and Winbrook.  No discovery has been conducted on what advantage DSG or York obtained.  The record consists only of a DSG principal's affidavit stating that it did not receive the goods and did not turn a profit, and Winbrook's invoices.

On summary judgment, the burden is on USLIC to demonstrate that no genuine dispute of fact exists with respect to the exclusion.  See Boazova, 462 Mass. at 351 (even at trial "[a]n insured bears the initial burden of proving that the claimed loss falls within the coverage of the insurance policy. . . . Once the insured does this, the burden then shifts to the insurer to show that a separate exclusion to coverage is applicable to the particular circumstances of the case").  This means that USLIC was required to show not only that the exclusion applied as a matter of law, but that the facts demonstrated that DSG received a gain that fell within the exclusion.  See Wintermute v. Kansas Bankers Sur. Co., 630 F.3d 1063, 1072 (8th Cir. 2011) ("Whether an insured in fact gained a personal profit is a fact issue that must be decided by a trier of fact if the relevant evidence is disputed").

USLIC failed to satisfy that burden where it produced no evidence of what advantage Winbrook's advances of services created. In this respect, this case is distinguishable from Jarvis Christian College, 197 F.3d at 744, where the undisputed fact was that $2 million was transferred to the corporate principal's business, creating a business opportunity.[11] Unlike the stock fraud in TIG Specialty Ins. Co., there is no showing here of actual personal gain. There is no showing of undisputed fact that money, goods, or services actually were delivered to which DSG was not legally entitled after the misrepresentations took place.[12] The actual or anticipated delivery of those services may have produced investment, advantage, or opportunity, but it was for USLIC to produce some evidence of that advantage or opportunity if it sought summary judgment. USLIC points to the affidavits of Winbrook's principals, and the principals of the other plaintiff companies as to services

---

[11] In Jarvis Christian College, the opportunity was created when the funds were transferred. The insured was operating at a net loss prior to the transfer. 197 F.3d at 744. The company continued to operate at a loss, but the cash infusion created a renewed opportunity to operate. Ibid. In this appeal, the parties do not contend that USLIC was required to show an actual profit.

[12] Winbrook submitted the affidavit of DSG's principal, who stated that the goods were warehoused and that DSG had no right or physical access to the product. Sales in the amount of $27,000 were made to third parties, but these sales were made before the misrepresentations, i.e., the wrongful acts, took place.

rendered without compensation, but Winbrook's losses are not necessarily dispositive of DSG's gain or advantage.  See note 7, supra.[13]

"Of course, [USLIC's] failure to show that it was entitled to summary judgment does not mean that the plaintiffs were entitled to the allowance of their cross motion for summary judgment.  See, e.g., Curly Customs, Inc. v. Bank of Boston, N.A., 49 Mass. App. Ct. 197, 199 (2000)."  Khalsa v. Sovereign Bank, N.A., 88 Mass. App. Ct. 824, 829 (2016).  With respect to its motion for summary judgment, Winbrook had the burden of demonstrating the absence of a genuine dispute whether DSG had not received a gain or advantage.  Winbrook produced some evidence in support of its motion for summary judgment showing that no advantage accrued to DSG, and that exclusion C was inapplicable as a matter of law, based on the affidavit from DSG's principal that stated no product was ever delivered to DSG.  However, a review of the documents substantiating Winbrook's claims for damages includes bills for services rendered, e.g., several months of employment as "VP of Product Development."  There are also bills for goods produced for trade

---

[13] Winbrook also argues that, even if an opportunity can be considered a gain in fact so as to trigger exclusion C, the opportunity must be viable and not merely speculative.  We do not address this argument because of the absence of a factual record as to what opportunities DSG had and what goods or services it did or did not supply.

shows on DSG's behalf.  Other bills include copies of artist's drawings of prototype characters, illustrations, and sample pages of written materials, such as a child's newspaper.  These invoices raise a question of material fact whether DSG received goods or services that created an opportunity for gain or advantage.  The Superior Court Rule 9A statement of disputed and undisputed material facts is utterly devoid of a statement whether DSG used the actual or anticipated receipt of products or services to obtain credit, investors, or customers.

Conclusion.  Summary judgment is not appropriate at this juncture, as genuine issues of material fact remain regarding the applicability of exclusion C, and neither party is entitled to judgment as matter of law.  The judgment is vacated and the matter is remanded to the Superior Court for further proceedings.

So ordered.