# United States Court of Appeals
## For the First Circuit

No. 18-1526

SCOTTSDALE INSURANCE COMPANY,

Plaintiff, Appellant,

v.

TIMOTHY L. BYRNE, as Co-Chairman of the Board of Trustees for
the Plumbers and Pipefitters Local 51 Pension and Annuity Funds;
ROBERT BOLTON, as Co-Chairman of the Board of Trustees for the
Plumbers and Pipefitters Local 51 Pension and Annuity Funds,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

Alexis J. Rogoski, with whom Edward C. Carleton and Skarzynski
Black LLC were on brief, for appellant.
Miranda S. Jones, with whom O'Reilly, Grosso, Gross & Jones,
P.C. was on brief, for appellee.

January 16, 2019

**STAHL**, **Circuit Judge**.  In late 2014, the appellees in this case brought suit against Wellesley Advisory Reality Fund I, LLC ("WARF").  Acting in their capacity as representatives of the Board of Trustees for the Plumbers and Pipefitters Local 51 Pension and Annuity Funds (the "Funds"), Appellees alleged that WARF had mismanaged and squandered money that the Funds had invested in that entity.  Following entry of default judgment against WARF in that case, WARF assigned the Funds its rights in WARF's insurance policy with Appellant Scottsdale Insurance Company ("Scottsdale"), which had declined to defend WARF on the basis of several exceptions within the policy.

Scottsdale brought an action against Appellees seeking a declaration that it did not owe WARF a duty to defend or indemnify under the policy and so owed the Funds nothing, and the Funds counterclaimed.  On cross-motions for summary judgment, the United States District Court for the District of Massachusetts ruled that the exclusions in Scottsdale's policies did not relieve the insurer of its duty to defend WARF in the prior action.  In a subsequent order, the district court awarded the Funds $3 million, the full limits of the insurance policy, plus post-judgment interest.

Scottsdale appeals, arguing both that it did not breach its duty to defend under the policy under Massachusetts law and that, even if it did, damages should be limited to the costs of the defense.  After careful consideration, we affirm.

I.

A. The Policy

The dispute in this appeal stems from a "Business and Management Indemnity Policy" (the "Policy") issued by Scottsdale to WARF, a real estate investment vehicle developed by Wellesley Advisors.[1] The Policy covered the period from November 15, 2013, to December 15, 2014,[2] and carries a coverage limit of $3 million. The Policy contains the following coverage clauses:

> 1. The Insurer shall pay the Loss of the Management Insureds for which the Management Insureds are not indemnified by the [Company and] which the Management Insureds have become legally obligated to pay by reason of a Claim first made against the Management Insureds during the Policy Period . . . and reported to the Insurer . . . for any Wrongful Act taking place prior to the end of the Policy Period.
>
> 2. The Insurer shall pay the Loss of the Company for which the Company has indemnified the Management Insureds and which the Management Insureds have become legally obligated to pay by reason of a Claim first [made against] the Management Insureds during the Policy Period . . . and reported to the Insurer . . . for any Wrongful Act taking place prior to the end of the Policy Period.
>
> 3. The Insurer shall pay the Loss of the Company which the Company becomes legally

___

[1] The Policy names Wellesley Advisors as the insured, and explicitly added WARF as an insured "parent company" in an endorsement dated November 15, 2013. The parties do not dispute that WARF was an insured under the Policy.

[2] Initially, the policy period was set to expire on November 15, 2014. Scottsdale and WARF subsequently extended this period by one month.

obligated to pay by reason of a [Claim first] made against the Company during the Policy Period . . . and reported to the Insurer . . . for any Wrongful Act taking place prior to the end of the Policy Period.

As relevant here, the Policy defines "Claim" as "a civil proceeding against any Insured seeking monetary damages or non-monetary or injunctive relief . . . ."  "Loss" is defined as "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges, and Expenses incurred by" the entities covered under the Policy.  "Wrongful Act" is defined as "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by" the insured entities.

The Policy contains a number of exclusions, three of which are claimed to be relevant to the present appeal.  First, the Policy includes a "Professional Services Exclusion" which states:

Insurer is not liable for Loss . . . on account of any Claim[] alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failure to render Professional Services. . . .

Solely for purposes of this exclusion, Professional Services means services as a real estate broker or agent, multiple listing agent, real estate appraiser, title agent, title abstractor or searcher, escrow agent, real estate developer, real estate consultant, property manager, real estate inspector, or construction manager.  Such services shall

- 4 -

include, without limitation, the purchase, sale, rental, leasing or valuation of real property; the arrangement of financing on real property; or any advice proffered by an Insured in connection with any of the foregoing.

Second, the Policy provides an "ERISA Exclusion" which states that Scottsdale

shall not be liable for Loss . . . on account of any Claim . . . for any actual or alleged violation of the responsibilities, obligations or duties imposed by [the] Employee Retirement Income Security Act of 1974, as amended ["ERISA"], or any rules or regulations promulgated thereunder, or similar provisions of any federal, state or local statutory or common law[.]

Finally, the Policy provides a "Conduct Exclusion" which excludes coverage for

Loss . . . on account of any Claim . . . alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

. . .

ii. the gaining of any profit, remuneration or financial advantage to [which any] Management Insureds were not legally entitled; provided, however this exclusion [] shall not apply unless and until there is a final judgment against such Management Insureds as to such conduct.

B.    The Underlying Action

On November 10, 2014, Appellees filed suit against WARF[3] in the United States District Court for the District of Massachusetts seeking damages and injunctive relief (the "Underlying Action").  Appellees claimed that, in 2005, they invested $5 million with WARF, which WARF subsequently used to "invest in various real estate parcels . . . ."  Specifically, the complaint avers that WARF purchased "The Stone House," a hotel in Little Compton, Rhode Island; a residential condominium called "Eastbourne Lodge" in Newport, Rhode Island; and a housing development in North Attleboro, Massachusetts.

As to The Stone House, Appellees averred that WARF entered into several mortgages on the property to fund renovations therein.  Appellees claimed that, despite this debt, WARF retained all revenue from hotel operations at The Stone House as a "'fee' for managing the property for [t]he Funds[]."  WARF failed to make required periodic payments on The Stone House mortgages, and the mortgagee sued for more than $5.6 million to enforce the mortgages against The Stone House.

---

[3] The complaint in that action addresses allegations to both "Wellesley Advisors" and "Wellesley Advisors Realty Fund I, LLC," seemingly interchangeably.  This appears to be a distinction without a difference, and the parties do not attach any significance to that point.  Accordingly, we refer to allegations as against WARF for clarity.

Separately, the complaint averred that "a sister or parent company" of WARF received notice from a different mortgagee of its intent to foreclose on and sell the North Attleboro property due to an unspecified "breach of the conditions of [that] mortgage."

Through these actions, Appellees averred that WARF "squandered the entire [$5 million] investment," and that "[t]he properties were either lost to foreclosure or written down to a zero value because of taxes or mortgages owed."

Based on these allegations, the Funds brought two claims in state court against WARF for negligence and violations of ERISA, respectively. Under the first of these claims, the complaint contends that WARF was negligent in overleveraging the properties in excess of their value, failing to pay property taxes, and retaining income from the investment properties, especially from The Stone House, for its own use. The second, ERISA-based count claims that, through its retention of revenues from The Stone House, WARF took on fiduciary duties to the Funds, which it subsequently violated through "self-dealing and mismanagement of [the properties.]"

WARF notified Scottsdale of the Funds' lawsuits against it on November 14, 2014. Scottsdale replied verbally (and, later, in writing) that the Funds' claims were excluded from coverage based on the ERISA and Professional Services Exclusions.

Accordingly, Scottsdale refused to either defend or indemnify WARF as to the Funds' claims. WARF went into receivership and did not contest the Underlying Action thereafter.

On November 25, 2015, the district court entered default judgment in the Underlying Action in favor of Appellees, awarding them $5,005,422.12.[4] On May 15, 2016, WARF assigned to Appellees all rights and claims that it held against Scottsdale.

### C.    Procedural History

Scottsdale brought the instant action on July 8, 2016, in the District Court for the District of Massachusetts, seeking declaratory judgment that Appellees' claims in the Underlying Action were not covered under the Policy and so that Scottsdale was not obligated to make any payments on the judgment in that case. Appellees included in their answer several counterclaims, including as relevant here claims that Scottsdale breached its duty to defend and to indemnify WARF in the Underlying Action. Appellees sought payment of the entire amount of the judgment in the Underlying Action plus post-judgment interest. The parties cross-moved for summary judgment.

On March 1, 2018, the district court denied Scottsdale's motion and granted partial summary judgment to Appellees. The court found that the allegations raised in the Underlying Action

---

[4] This amount includes both the principal amount claimed ($5 million) as well as costs and attorneys' fees.

were not "clearly excluded" from coverage under the policy and so Scottsdale had, at minimum, a duty to defend WARF against those claims.  Based on Scottsdale's uncontested failure to take up WARF's legal defense in the Underlying Action, the court concluded that Scottsdale was liable to Appellees and required the parties to file "motions concerning the form of the judgment," which it said would "[p]resumably . . . be awarded [in] the amount of the coverage limit."  After the parties submitted the required motions,[5] the court entered judgment for Appellees on May 8, 2015, in the amount of $3,038,081.10, consisting of the policy limit of $3 million plus post-judgment interest calculated at the statutory rate.  Scottsdale timely appealed the district court's judgment.

## II.

On appeal, Scottsdale argues that the district court erred in concluding that it had a duty to defend the Underlying Action.  It points to the Policy's Professional Services and ERISA Exclusions, contending that each of those exclusions clearly applies to the claims asserted in the Underlying Action and

---

[5] In its motion, Scottsdale also moved for clarification of the summary judgment order, seeking dismissal of Appellees' counterclaims for breaches of the implied covenant of good faith and fair dealing, and violation of the Massachusetts consumer protection statute, which the district court initially failed to address.  Appellees, on the other hand, sought entry of judgment in the full amount of damages in the Underlying Action.  The court dismissed the remaining claims and denied the motion for damages in excess of the policy limit plus interest.

independently provides a basis for denying coverage.  In the alternative, Scottsdale contends that it is only liable for the costs of defending the Underlying Action —— not the entire policy limit —— because the claims are excluded by the Policy's Conduct Exclusion.  We examine these arguments separately and find no reason to reverse the district court's determination.

## A.   Standard of Review

Review of the district court's grant of summary judgment is de novo.  Barrett Paving Materials, Inc. v. Continental Ins. Co., 488 F.3d 59, 63 (1st Cir. 2007).  Where, as here, there is no dispute regarding the material facts, the only issue is whether the moving party is entitled to judgment as a matter of law.  Id. (citation omitted).

This case comes before us based on our diversity jurisdiction, and the parties agree that Massachusetts provides the substantive law to be applied.   "The interpretation of an insurance policy is a question of law for the court."  Valley Forge Ins. Co. v. Field, 670 F.3d 93, 97 (1st Cir. 2012) (citation omitted).  "Under Massachusetts law, [the court] construe[s] an insurance policy under the general rules of contract interpretation. . . . begin[ning] with the actual language of the policies, given its plain and ordinary meaning."  Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000) (citations omitted).

The "insurer's duty to defend is independent from, and broader than, its duty to indemnify," Metro. Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 667 (Mass. 2011) (internal quotation marks and citation omitted), and insurers "owe[] a duty to defend [their insured] if the allegations in the underlying lawsuit are reasonably susceptible to an interpretation that they state a claim covered by [the] policy," Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009) (citation omitted); see also Billings v. Commerce Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010) ("An insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." (footnote and citation omitted)). Said somewhat differently, "[i]n order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 341 (Mass. App. Ct. 1983) (internal quotation marks and citation omitted). Courts look to "the source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint" to determine whether the policy covers the claim under this standard. Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 817

- 11 -

(Mass. 1999) (internal quotation marks, citation, and emphasis omitted).

Where, as here, an insurer asserts that it is not obligated to defend due to some policy exclusion or exclusions, it bears the initial burden of demonstrating that the exclusion applies.[6]  See Saint Consulting Grp., Inc. v. Endurance Am. Spec. Ins. Co., Inc., 699 F.3d 544, 550 (1st Cir. 2012) (citation omitted).  In order to meet this requirement, "the facts alleged in the third-party complaint must establish that the exclusion applies to all potential liability as matter of law."  Norfolk & Dedham Mut. Fire Ins. Co. v. Cleary Consultants, Inc., 958 N.E.2d 853, 862 (Mass. App. Ct. 2011) (citation omitted); see also Saint Consulting Grp., 699 F.3d at 550 ("If even one of the counts in either of the complaints falls within the coverage provisions but outside any exclusion, [the insurer] would have a duty to defend the entire lawsuit.").  "[W]hether an exclusion applies to relieve an insurer of its duty to defend [] depend[s] on whether the insured would have reasonably understood the exclusion to bar

_____

[6] Generally, the insured bears the initial burden of "showing that the overall coverage provisions of the insurance policy apply[.]"  Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co., 734 F.3d 51, 55 n.1 (1st Cir. 2013).  Where, as here, the dispute centers only on the effect of coverage exclusions, the court can bypass this initial showing and proceed directly to evaluating the reach of those exclusions.  See id. at 55.

- 12 -

coverage."  Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 404 (1st Cir. 2009).

### B.    The Professional Services Exclusion

Scottsdale first contends that all of the allegations in the Underlying Action fall within the purview of the Professional Services Exclusion.  In particular, it contends that all of the allegations in that case "arose out of" or "involved" "real estate development, property management, the purchase of real property, or the arrangement of financing on real property," all of which Scottsdale argues fall "within the plain meaning of the Professional Services Exclusion."  In support of this position, Scottsdale relies on the broad readings afforded by Massachusetts law to the terms "arising out of" and "in any way involving," both of which are used to preface the substantive scope of the Professional Services Exclusion (as well as the other relevant exclusions).  See Bagley, 720 N.E.2d at 816 (explaining that the phrase "arising out of" "must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law" (citations omitted)); Clark Sch. for Creative Learning, 734 F.3d at 56 (holding that "in any way involving" acts as a "mop-up clause, intended to exclude anything not already excluded by the other clauses," including "arising out of").

Scottsdale's argument fails, however, to account for all of the claims raised in the Underlying Action.  As noted above,

- 13 -

the Underlying Action concerned losses stemming from WARF's investment in three properties: The Stone House, and properties in North Attleboro and Newport. Were those allegations limited to claims regarding the mismanagement of The Stone House, we might agree: claims stemming from WARF's renovation of that property and retention of revenues from its operation of the hotel as a "management" fee fit seemingly well within the exclusion for actions taken "as a . . . real estate developer [or] . . . property manager." As Appellees observed at oral argument, however, the complaint offers no similar allegations that WARF was developing, improving, or managing operations at the investment properties in North Attleboro or Newport. Beyond alleging that WARF invested in those parcels, the only additional claims are that the properties were "lost to foreclosure or written down to a zero value because of tax or mortgages owed" and, generally, that WARF "engaged in self-dealing by retaining investment income from the properties for its own use." These limited allegations preclude any meaningful evaluation of whether the loss of the Newport and North Attleboro properties was attributable to WARF's actions as a property manager, developer, investor, or otherwise. As the district court observed, "[a]t the very least, it is ambiguous whether in fact all of WARF's purported misconduct stemmed from" WARF's provision of professional services. Thus, the allegations concerning the Newport and North Attleboro properties are not

clearly within the Professional Services Exclusion, and, where there is ambiguity, there is a duty to defend.

Scottsdale attempts to argue around this shortcoming, claiming that all of the allegations fall within the broad definition of "services" —— especially the "arrangement of financing on real property" —— included in the Professional Services Exclusion. Scottsdale misreads its own policy, however: the plain language of the Policy is clear that, in order to fall within the Professional Services Exclusion, the "services" as defined must be provided "as a real estate broker or agent," "property manager," or another of that exclusion's enumerated roles. As noted above, the allegations set forth in the Underlying Action do not offer any meaningful basis from which we can conclude that WARF was acting in any one of those roles with respect to either the North Attleboro or Newport properties.

We therefore conclude that Scottsdale failed to meet its burden of establishing that the Professional Services Exclusion applies to all claims of liability within the Underlying Action.

## C.   The ERISA Exclusion

Scottsdale next turns to the ERISA Exclusion. As discussed, the Underlying Action asserted both a negligence claim and, separately, a claim that WARF's actions violated duties imposed by ERISA. The parties do not dispute that the latter of these claims falls outside of the Policy's coverage, and that count

is not at issue here.  Scottsdale goes a step further, however, contending that because the negligence and ERISA claims arise from the same set of facts, the negligence claim is therefore preempted by ERISA.

At the outset, we note that none of the categories of excluded "Claims" —— "actual or alleged violations" of (1) ERISA; (2) "rules or regulations promulgated" pursuant to ERISA; or (3) "similar provisions of federal, state or local statutory or common law" —— explicitly remove "preempted" state law claims from the Policy's coverage.  Recognizing this shortcoming, Scottsdale attempts to shoehorn preempted state-law claims into this clause as a "similar provision[] of . . . state . . . common law."  In our view, however, the question of whether that language could extend to a common law action for negligence, stated without reference to ERISA-like fiduciary duties, is ambiguous at best. That observation alone settles the issue before us: Scottsdale has the burden of demonstrating the exclusion's application to the Underlying Action, and all ambiguities must be read against the insurer.  See Valley Forge Ins. Co., 670 F.3d at 97.  Accordingly, we see no basis for excusing Scottsdale from its duty to defend based on the ERISA Exclusion.[7]

---

[7] Because we find that neither of the exclusions cited by Scottsdale excuse it from its duty to defend, we do not reach Appellees' alternate argument that, under its terms, the Policy's

In its final argument, Scottsdale contends that its liability is limited by the Policy's Conduct Exclusion.  Unlike the Professional Services and ERISA Exclusions, Scottsdale does not claim that the Conduct Exclusion excuses it from its duty to defend: by its terms, that exclusion is not implicated "unless and until there is a final judgment against [the] . . . Insureds . . . ."  Rather, Scottsdale contends that, even if it breached the duty to defend, it should be permitted to contest and limit its indemnity obligation based on that exclusion's application to financial gains to which WARF was not entitled, specifically WARF's alleged retention of "investment income from the properties" at issue in the Underlying Action.

An insurer's breach of its duty to defend "may also trigger a duty to indemnify because an insurer in breach of its duty to defend is bound by the result of the underlying action as to all matters therein decided which are material to recovery by the insured in an action on the policy."  Metro Prop. & Cas. Ins., 951 N.E.2d at 669 (internal quotation marks, alterations, and citation omitted); see also Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 63 (1st Cir. 2001) ("[T]he general rule under Massachusetts law is that if the insurer fails to defend the

---

exclusions do not relieve the insurer of its duty to defend in any event.

- 17 -

lawsuit, it is liable for all defense costs and (assuming policy coverage) the entire resulting judgment or settlement, unless liability can be allocated among covered and uncovered claims.") (citations omitted). "Where [the insured] defendant defaults, the factual allegations in the complaint as to liability are deemed to be admitted . . . and treated as if they are true" as to both the defendant and those insurers who wrongfully decline to defend the case.  Metro. Prop. & Cas. Ins., 951 N.E.2d at 669.

Subject to these provisos, "insurer[s] that wrongfully decline[] to defend a claim" may contest their indemnity under their policy, provided, however, that they "have the burden of proving that the claim was not within [the] policy's coverage." Polaroid Corp. v. Travelers Indem. Co., 610 N.E.2d 912, 922 (Mass. 1993).  Moreover, where some of the claims fall within a policy's coverage and others do not, "an insurer that breaches its duty to defend bears the burden of allocating a judgment against its insured between covered and noncovered claims."  Palermo v. Fireman's Fund Ins. Co., 676 N.E.2d 1158, 1163 (Mass. App. Ct. 1997); see also Liquor Liab. Joint Underwriting Ass'n of Mass. v. Hermitage Ins. Co., 644 N.E.2d 964, 968-69 (Mass. 1995).

Similar to the Professional Services Exclusion, Scottsdale's attempt to escape its indemnity obligation fails to account for all of the claims made in the Underlying Action. Scottsdale maintains a narrow focus on allegations that WARF

engaged in self-dealing when it retained fees from the investment properties. Self-dealing, however, is just one component of the many allegations in the Underlying Action. Much of the complaint is concerned not with WARF's improper gain or pecuniary advantage, but rather the squandering of Appellees' investment through, among other things, negligently overleveraging and failing to pay taxes and service mortgages on the properties.[8] Those allegations were "conclusively establishe[d]" by the entry of default as to Scottsdale, Metro. Prop. & Cas. Ins., 951 N.E.2d at 669, and they offer a theory of Appellees' loss that is entirely separate from any improper gain by WARF. Scottsdale provides no basis from which we could conclude that the Conduct Exclusion covers all of the material allegations established in the Underlying Action, and it further fails to demonstrate any grounds for allocating the judgment award between portions attributable to WARF's improper

---

[8] Scottsdale's reliance on Winbrook Communication Services Inc. v. United States Liability Insurance Company, 52 N.E.3d 195 (Mass. App. Ct. 2016), is misplaced. There, the insured company's negligent misstatements about its own financial stability induced the judgment creditor to provide a benefit in the form of services for which it was never paid. Id. at 197. Examining a conduct exclusion similar to that in the Policy, the court concluded that evidence in the record indicated that, through its misrepresentations, the insured might have "received goods or services that created an opportunity for gain or advantage . . . . [such as] credit, investors, or customers." Id. at 203. In other words, the insured's negligence might have directly contributed to its receipt of an advantage to which it was not legally entitled. In this case, however, we see no basis to conclude that WARF's negligence in squandering Appellees' investment led to any demonstrable gain.

gains and negligent losses.  As such, we see no basis from which to relieve Scottsdale of its obligation to pay the policy limit.[9]

### III.

The judgment of the district court is AFFIRMED.

<hr/>

[9] In their opposition brief, Appellees hint that the district court erred in limiting their recovery to the policy limits, rather than the full judgment.  Because Appellees failed to cross-appeal on that issue, we do not address the merits of their claim.  See Jennings v. Stephens, __ U.S. __, 135 S. Ct. 793, 798 (2015) ("[A]n appellee who does not cross-appeal may not attack the [judgment of the lower court] with a view either to enlarging his own rights thereunder or lessening the rights of his adversary." (internal quotation marks and citation omitted)).